MASHPEE TRIBE, Plaintiff,

v.

NEW SEABURY CORP. et al., Defendants.

Civ. A. No. 76–3190–S.

United States District Court,
D. Massachusetts.

Feb. 28, 1977.

Barry A. Margolin, Native American Rights Fund, Boston, Mass., Thomas N. Tureen, Dennis M. Montgomery, Calais, Maine, for plaintiff.

James D. St. Clair, Boston, Mass., for Town of Mashpee, Maurice A. Cooper and John D. Ferguson.

Selma R. Rollins, Brookline, Mass., for New Seabury Corp., New Seabury Conveyancing Corp. and Fields Point Manufacturing Corp.

Thomas Otis, Boston, Mass., for Thomas Otis, William M. Atwood, Russell Makepeace and Maurice Makepeace, general partners doing business as Wiljoles Lands, a Massachusetts limited partnership.

Samuel Hoar, Boston, Mass., for Mary Jane Shoop.

Edwin J. Carr, Boston, Mass., for New Bedford Gas & Edison Light Co.

Atty. Gen. of the Commonwealth of Massachusetts, for Colton H. Bridges.

Thomas B. Shea, Boston, Mass., for Greenwood Development Corp.

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

SKINNER, District Judge.

This case came before me on January 24, 1977, for a hearing on the defendant Town of Mashpee's (hereinafter, the Town) motion to dismiss.

This is a defendant class action (see Memorandum and Order of January 21, 1977) in which the Mashpee Tribe (hereinafter, the Tribe) seeks a declaration of its right to possession of certain land in the Town of Mashpee, "excepting, however, any portion of the subject land which constituted the actual site of the principal place of residence of any individual as of the time of commencement of this action." The plaintiff seeks to be restored to possession of the land, other than principal residences, and a declaration that it is entitled to the fair rental value of any land continuing in the possession of any defendant after entry of final judgment in the action.

The Tribe claims that all of the land it seeks was alienated from the Tribe in violation of the Indian Nonintercourse Act. 25 U.S.C. § 177.[1] This Act states, in relevant part:

> No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution.

■ The purpose of this statute has been declared to be "to prevent unfair, improvident or improper disposition by Indians of land owned or possessed by them to other parties. . . ." *Federal Power Com-*

---

1. The Indian Nonintercourse Act was first adopted, in a form substantially the same as it now appears, on July 22, 1790, 1 Stat. 137. It was subsequently reenacted several times: 1793, 1 Stat. 329; 1796, 1 Stat. 469, 472; 1799, 1 Stat. 743, 746; and made permanent in 1802, 2 Stat. 139, 143, now appearing at 25 U.S.C. § 177.

mission v. Tuscarora Indian Nation, 362 U.S. 99, 119, 80 S.Ct. 543, 555, 4 L.Ed.2d 584 (1960).

This court has subject matter jurisdiction of this claim under 28 U.S.C. § 1331. Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

The motion to dismiss rests on three asserted grounds: (1) that by failing to allege official recognition, the Tribe has failed to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6); (2) that the Tribe has failed to join the United States as an indispensable party, Fed.R.Civ.P. 12(b)(7) and 19; and (3) that the Tribe has failed to join the Commonwealth of Massachusetts as an indispensable party, Fed.R. Civ.P. 12(b)(7) and 19.

### Motion to Dismiss under Fed.R.Civ.P. 12(b)(6)

■ The elements of a prima facie case demonstrating that § 177 covers the land in question have been set forth in Narragansett Tribe of Indians v. So. R.I. Land Develop., 418 F.Supp. 798 (D.R.I.1976) (hereinafter, Narragansett), as follows:

. . . plaintiff must show that:

1) it is or represents an Indian "tribe" within the meaning of the Act;

2) the parcels of land at issue herein are covered by the Act as tribal land;

3) the United States has never consented to the alienation of the tribal land;

4) the trust relationship between the United States and the tribe, which is established by coverage of the Act, has never been terminated or abandoned.

418 F.Supp. at 803; see Joint Tribal Council of the Passamaquoddy Tribe v. Morton, 528 F.2d 370 (1st Cir. 1975), aff'g, 388 F.Supp. 649 (D.Me.1975) (hereinafter Passamaquoddy).

The Town singles out the first of these elements as having been defectively alleged. It claims that the plaintiff must plead that it is "recognized" as a tribe by

Congress or its delegate. Absent such an allegation, says the Town, this court is faced with a non-justiciable political question.

This argument is virtually identical to one raised by defendants and rejected in a carefully reasoned memorandum in Narragansett, supra at 813–815. As in that case, none of the elements which would constitute a non-justiciable political question as set forth in Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), are present here.[2]

■ Recognition as a tribe by the executive branch of government, while it would be relevant in determining whether a group is a tribe under the Indian Nonintercourse Act, is not necessary to such a determination. Passamaquoddy, supra at 377–378; Narragansett, supra at 813–815. Indeed, recognition as a tribe by Congress or its executive delegate may not even be sufficient to bring a group within its authority if a court, "[a]ble to discern what is 'distinctly Indian,'" strikes down a heedless or arbitrary extension of the label. Baker v. Carr, supra 369 U.S. at 215–217, 82 S.Ct. at 710. As Passamaquoddy pointed out, "[t]here is nothing in the Act to suggest that 'tribe' is to be read to exclude a bona fide tribe not otherwise federally recognized." Passamaquoddy, supra at 377.

■ Once Congress has determined, as it did here, to include tribes generally within the coverage of an act, Passamaquoddy, supra, a court is competent to determine whether a given aggregate of individuals constitutes a tribe. Narragansett, supra; see United States v. Washington, 520 F.2d 676 (9th Cir. 1975, cert. denied, 424 U.S. 978, 96 S.Ct. 1487, 47 L.Ed.2d 750 (1976). The applicable (and "judicially manageable") standard for such a determination is to be found in the definition of "Indian tribe" in Montoya v. United States, 180 U.S. 261, 266, 21 S.Ct. 358, 359, 45 L.Ed. 521 (1901), and

2. See also Delaware Tribal Business Committee v. Weeks, —— U.S. ——, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977).

the cases in which that definition has been applied.

A "tribe", according to *Montoya*, is:

. . . a body of Indians of the same or a similar race, united in a community under one leadership or government, and inhabiting a particular, though sometimes ill-defined, territory.

*Montoya, supra,* quoted, *e. g., United States v. Candelaria,* 271 U.S. 432, 442, 46 S.Ct. 561, 70 L.Ed. 1023 (1926); *Passamaquoddy, supra* at 377, n. 8; *Narragansett, supra* at 815. In *Candelaria, supra,* the Supreme Court found the Pueblos to be a tribe within the terms of this definition, thus overruling a contrary result in *United States v. Joseph,* 94 U.S. 614, 24 L.Ed. 295 (1876), but leaving intact an additional standard suggested in *Joseph*: that the tribe for purposes of the Nonintercourse Act consists of "simple uninformed people." A tribe may thus be so sophisticated or assimilated as to fall outside of the scope of protection afforded by the Nonintercourse Act. *Passamaquoddy, supra* at 378 (dictum); *see Candelaria, supra; Joseph, supra; cf. The Kansas Indians,* 5 Wall. (72 U.S.) 737, 755–757, 18 L.Ed. 667 (1866); *United States v. Cisna,* 25 Fed.Cas.No. 14,795 422 (C.C.D. Ohio 1835).

■ The Tribe has then sufficiently alleged its status. Whether it meets the criteria for protection under the Nonintercourse Act is a question of fact which is susceptible of proof like any other. Accordingly, the Town's motion to dismiss under Rule 12(b)(6) is DENIED.

### Motion to Dismiss for Failure to Join the United States

The Town seeks to have the United States joined under Rule 19(a) if it has waived sovereign immunity, but if not, it seeks to have the action dismissed for failure to join an indispensable party under Rule 19(b).

■ It is well established that a tribe may sue on its own behalf to protect its rights in real property without the participation of the United States as a plaintiff.

*E. g., Poafpybitty v. Skelly Oil Co.,* 390 U.S. 365, 88 S.Ct. 982, 19 L.Ed.2d 1238 (1968) (involving individual Indian); *Creek Nation v. United States,* 318 U.S. 629, 63 S.Ct. 784, 87 L.Ed. 1046 (1943); *Lane v. Pueblo of Santa Rosa,* 249 U.S. 110, 39 S.Ct. 185, 63 L.Ed. 504 (1919); *Choctaw & Chickasaw Nations v. Seitz,* 193 F.2d 456 (10th Cir. 1951) *cert. denied,* 343 U.S. 919, 72 S.Ct. 676, 96 L.Ed. 1332 (1952); *Narragansett, supra; see Moe v. Salish & Kootenai Tribes,* 425 U.S. 463, 472–473, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *Oneida Indian Nation v. County of Oneida,* 464 F.2d 916, 919 n. 4 (2d Cir. 1972), rev'd on other grounds, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

■ It is also well established that the United States would not be bound by a result in this action adverse to the Tribe. *United States v. Candelaria, supra; see also, Poafpybitty, supra* 390 U.S. at 371, 88 S.Ct. 982; *Fort Mojave Tribe v. Lafollette,* 478 F.2d 1016 (9th Cir. 1973); *Seitz, supra; Narragansett, supra* at 810.

■ Under these circumstances, as the parties agree, the United States would be a proper party for joinder under Rule 19(a) if it had waived sovereign immunity. It has not done so. The general consent to suit against the United States in civil actions to adjudicate disputed title where the United States claims an interest, given in 28 U.S.C. § 2409a, expressly excludes actions, like the one at bar, which involve "trust or restricted Indian lands".

■ The Town relies on *United States v. Phillips,* 362 F.Supp. 462 (D.Neb. 1973), for the proposition that where it has not been *determined* that land is "trust or restricted Indian lands", the United States has effectively waived sovereign immunity in § 2409a. The major ground in *Phillips* for finding a waiver, however, was that the United States brought the action to quiet title in the first place and had thus waived immunity with respect to the very issues raised in a counterclaim by the defendant to quiet title. There is no basis for extending the waiver to an action which the United States has not voluntarily initiated.

Such an extension would violate both the requirement that a statutory waiver of sovereign immunity be strictly construed, *Nickerson v. United States*, 513 F.2d 31, 33 (1st Cir. 1975), and the rule that ambiguities in statutes relating to Indians should never be construed to the Indian's prejudice. *Passamaquoddy*, 528 F.2d at 380.

■ Since the United States may not be compelled to join in this action, the question becomes whether in equity the action ought to be dismissed under Rule 19(b). Courts have consistently followed the lead of *Seitz, supra*, in refusing to rule that the United States is an indispensable party where the Indians sue to enforce federally protected rights. *E. g., Poafpybitty, supra; Fort Mojave Tribe v. Lafollette, supra; Narragansett, supra.*

The Town argues, however, that one important factor contributing to the results in those cases has since disappeared, because Indians now have an adequate alternative remedy in the event of a dismissal.

Contrary to the assertion of the Town, *Passamaquoddy, supra*, does not give a tribe the right to compel the United States to bring suit to recover possession for the Tribe. That case stands only for the power of the court to review a refusal by the United States to bring an action on behalf of a tribe where the refusal rests solely on the ground that a fiduciary relationship does not exist. *See Passamaquoddy*, 388 F.Supp. at 664–666.

The Town also asserts that *Edwardsen v. Morton*, 369 F.Supp. 1359 (D.D.C.1973), describes an alternative remedy available to Indians. The case is inapposite in that it deals with liability for specific affirmative action alleged to be in violation of the government's fiduciary duty over land formerly under the direct control of the Department of the Interior. The case teaches nothing about the right of Indians to require the United States or its representatives to enforce claims against third parties in its fiduciary capacity.

The availability and nature of such direct relief is too doubtful to warrant dismissal under Rule 19(b). *See generally*, Chambers, *Judicial Enforcement of the Federal Trust Responsibility to Indians*, 27 Stan.L.R. 1213 (1975).

Accordingly, the Town's motion to dismiss for failure to join the United States as an indispensable party is DENIED.[3] *Seitz, supra; Narragansett, supra.*

### Motion to Dismiss for Failure to Join Massachusetts

■ The Town asserts that the Commonwealth may hold a superior claim to defendants in this action if the Tribe proves that the Nonintercourse Act applies to the subject land. On that basis, the Town seeks joinder of the Commonwealth under Rule 19(a) if it has waived sovereign immunity and dismissal under Rule 19(b) if not.

The Tribe's claim, however, is to possessory rights, or rights of occupancy, as against defendants now keeping the Tribe out of possession. *See Oneida Indian Nation v. County of Oneida*, 414 U.S. at 667, 94 S.Ct. 772. The existence of any rights in fee in the Commonwealth would be contingent upon the Tribe's success in its claim and on the Commonwealth showing it had not transferred its rights. *See Fellows v. Blacksmith*, 19 How. (60 U.S.) 366, 15 L.Ed. 684 (1856). Lack of resolution of such an issue will not prevent there being complete relief among those already parties concerning possessory rights. Nor will it subject any parties to a substantial risk of incurring inconsistent obligations as to possession or practically impair the Commonwealth's ability to protect its interest. Thus, there is no ground for attempting to join the Commonwealth under Rule 19(a), nor, of course, is it an indispensable party under Rule 19(b). Accordingly, the Town's motion to join Massachusetts under Rule 19(a) or to dismiss under Rule 19(b) is DENIED.

---

**3.** The United States is, however, invited to intervene as it has been in *Narragansett*, 418 F.Supp. at 810–811.