Herbert L. NEWMAN, a single man, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

No. CIV 80–418 PCT EHC.

United States District Court, D. Arizona.

Jan. 8, 1981.

Terrence S. Leek, Leek & Lee, Bullhead City, Ariz., for plaintiff.

Dale T. White, Dept. of Justice, Land and Natural Resources Div., Washington, D. C., Richard S. Allemann, Asst. U. S. Atty., Phoenix, Ariz., for defendant, United States.

1. Plaintiff has voluntarily dismissed the action as to The Fort Mojave Tribal Council. The defendant State of Arizona has answered claiming an interest in the property.

2. Affidavit of Jerrold E. Knight, Riparian Boundary Specialist, Division of Cadastral Survey, Bureau of Land Management. (Exhibit A of the United States' Motion to Dismiss, document 9).

## MEMORANDUM AND ORDER

CARROLL, District Judge.

The United States has moved to dismiss Plaintiff's complaint contending that it has not consented to be sued under the circumstances at issue in this proceeding.

The action was brought by Plaintiff Herbert Newman against the United States and others [1] pursuant to 28 U.S.C. § 2409a, to quiet title to certain lands in Mohave County, Arizona. The Plaintiff alleged on information and belief

·(T)hat the Defendant UNITED STATES or persons claiming by, through or under it claims that Plaintiff's lands, under a so-called doctrine of accretion, have accreted to said Section 4 and by reason thereof Plaintiff's lands described herein are now owned by the UNITED STATES or persons claiming by, through or under it and not by Plaintiff. (Plaintiff's complaint, document number 1).

It is undisputed for purposes of this motion that Section 4, Township 17 North, Range 22 West, Gila and Salt River Base and Meridian, Arizona, is a fractional section, and that when surveyed in 1905 its western boundary was the ordinary high water mark of the Colorado River as evidenced by the meander line along the left descending bank [2]. It is further undisputed that fractional Section 4 was reserved by the United States in 1911 for the use of the Fort Mojave Indian Reservation.

Plaintiff relies on 28 U.S.C. § 2409a as providing the necessary Congressional waiver of sovereign immunity with respect to quiet title actions brought against the United States. Specifically excepted from this governmental waiver are actions involving "trust or restricted Indian lands". 28 U.S.C. § 2409a(a).[3]

3. Title 28 U.S.C. § 2409a provides in pertinent part as follows:

\* \* \* \* \* \*

(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands, \* \* \*

**1178**

## THE ISSUE

The United States takes the position that once it claims that the disputed lands are "trust or restricted Indian lands", then the consent to suit provision of § 2409a is inapplicable and the doctrine of sovereign immunity precludes the suit. To hold otherwise, the Government contends, would be to subject the United States to suit in the absence of Congressional consent and contrary to § 2409a.

In response, the plaintiff sets forth two major arguments. The first argument asserts that the Court must decide on the basis of the record before it "whether or not the lands claimed by plaintiff are trust or restricted Indian lands as that term is used in 28 U.S.C. § 2409a." Plaintiff's Response to the United States' Motion to Dismiss, document number 15. As corollaries to this argument, the plaintiff contends (a) that since the disputed land was not originally declared to be "trust or restricted Indian lands" it can not fall within the meaning of that term as used by § 2409a; and (b) that in any event only Congress can change the boundary of an Indian reservation. The second argument asserted by plaintiff is that a "mere claim" by the United States that the disputed land is "trust or restricted Indian lands" is insufficient to invoke the exception to the consent statute. Therefore, such claim is an insufficient basis for the dismissal of the action.

As seen by the Court, the determinative question is whether the United States has consented to suit in a quiet title action brought pursuant to 28 U.S.C. § 2409a, where the United States asserts a substantial interest in lands it claims to be "trust or restricted Indian lands", and where the Court's decision would involve fixing a boundary between such restricted land and the disputed land. For the reasons which follow, the Court holds that § 2409a does not provide the necessary consent to suit in quiet title actions in such circumstances. Furthermore, since the Court finds that the present claim asserted by the United States in plaintiff's land is substantial, the motion to dismiss is granted.

## DISCUSSION

*Scope of the waiver contained in § 2409a*

■ It is well established that statutory waivers of sovereign immunity are to be strictly construed. *McMahon v. United States*, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951). This general rule of construction has been held to apply in interpreting the scope of the waiver contained in § 2409a. *Mashpee Tribe v. New Seabury Corp.*, 427 F.Supp. 899 (D.Mass.1977).

■ It is also well established that statutes which contain ambiguities relating to Indian matters are not to be construed to the prejudice of the Indians. *Mashpee, supra* at 904; *Joint Tribal Council of the Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 380 (1st Cir. 1975), aff'g 388 F.Supp. 649 (D.Me.1975). In this regard, the legislative history behind the § 2409a(a) exception discloses that Congress intended to prevent prejudice to Indian rights and to prevent the abridgment of "the historic relationship between the Federal Government and the Indians without the consent of the Indians." Quiet Title Act, Pub.L. 92–562, 1972 U.S. Code Cong. & Admin.News, pp. 4547, 4557. It is clear, therefore, that Congress did not intend to waive its sovereign immunity with respect to quiet title action in cases which would impact on Indian ownership rights.

[3] Furthermore, the fact that there has been no prior determination of whether the disputed land is or is not "trust or restricted Indian lands" is irrelevant to the issue of whether § 2409a provides a waiver of sovereign immunity. In *Mashpee, supra*, the defendant (Town) argued, as plaintiff argues now, that § 2409a provided consent to suit in instances there the disputed land has not been declared by Congress or the Courts to be "trust or restricted Indian lands". In addressing this argument, the district court noted as follows:

> The Town relies on *United States v. Phillips*, 362 F.Supp. 462 (D.Neb.1973), for the proposition that where it has not been determined that land is 'trust or restricted Indian lands', the United States has

effectively waived sovereign immunity in § 2409a. The major ground in *Phillips* for finding a waiver, however, was that the United States brought the action to quiet title in the first place and had thus waived immunity with respect to the very issues raised in a counterclaim by the defendant to quiet title. There is no basis for extending the waiver to an action which the United States has not voluntarily initiated. Such an extension would violate both the requirement that a statutory waiver of sovereign immunity be strictly construed, *Nickerson v. United States*, 513 F.2d 31, 33 (1st Cir. 1975), and the rule that ambiguities in statutes relating to Indians should never be construed to the Indian's prejudice.

*Mashpee Tribe v. New Seabury Corp.*, 427 F.Supp. at 904 (citing *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 380 (1st Cir. 1975)).

■ Applying these principles to the instant case, it is clear that under the circumstances § 2409a does not provide a waiver of sovereign immunity. However, to hold that all such claims by the Government invoke the except clause of the consent statute would go too far. Accordingly, the Court turns to the general rules applicable prior to the enactment of 28 U.S.C. § 2409a for guidance.

*Law prior to the enactment of the Quiet Title Act.*

Prior to the enactment of the Quiet Title Act in 1972, 28 U.S.C. § 2409 et seq., the general rule applicable in any quiet title action when the United States asserted an interest in the land was as expressed in *Louisiana v. Garfield*, 211 U.S. 70, 77, 78, 29 S.Ct. 31, 32, 33, 53 L.Ed. 92 (1908). In *Louisiana v. Garfield*, the Supreme Court held that it did not have jurisdiction of an action brought by a State against the Secretary of Interior to establish title to, and prevent other disposition of lands claimed under swamp land grants, where questions of law and fact existed as to whether the United States still owned the land, and where the United States had not consented to be sued. The Court stated that it would

"assume for purposes of decision that if the United States clearly had no title to the land in controversy we should have jurisdiction to entertain this suit; for we are of the opinion that even on that assumption the bill must be dismissed." *Id.* at 75, 29 S.Ct. at 32.

The rationale for this "opinion" is suspect, since the Court did consider and reject arguments advanced by the United States regarding reasons for its claimed ownership of title as well as expressing doubt whether Louisiana might not have title by failure of the United States to have taken some action. The Court held that such "doubt cannot be resolved in this case", since the issue raised "questions of law and of fact upon which the United States would have to be heard". *Id.* at 77, 29 S.Ct. at 32. The Court then suggested various legal and factual arguments that the United States might make in order to sustain a claim of ownership. In the final analysis, the Court found the United States to be a necessary, but non-consenting, party to the suit and accordingly dismissed the bill for lack of jurisdiction. *Id.* at 78, 29 S.Ct. at 33.

*Louisiana v. Garfield*, and its lineal descendants prior to the Quiet Title Act of 1972, did look at the claimed interest of the Government to determine whether such interest was substantial and, if so, dismissed the action without attempting to resolve the ultimate issue. *Morrison v. Work*, 266 U.S. 481, 485, 45 S.Ct. 149, 151, 69 L.Ed. 394 (1925); *New Mexico v. Lane*, 243 U.S. 52, 37 S.Ct. 348, 61 L.Ed. 588 (1917). Thus, under prior law where the claim asserted by the United States was substantial, the federal courts were without jurisdiction.

The Court finds that this principle is applicable in cases where the Government asserts an interest in lands it claims falls within the exception to § 2409a. Accordingly, the only issue to be resolved is whether the United States has raised such a claim in this instance.

*The interest asserted by the United States is substantial*

■ The United States has claimed an interest in plaintiff's land under the doc-

trine of accretion. Plaintiff's position is that the boundaries of an Indian reservation must be as fixed by Congress and cannot be extended (or reduced) in the absence of Congressional action. Such position is unsupported by case law.

The United States Supreme Court decision in *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979), would appear to resolve any doubts that an Indian reservation may gain or lose land due to river changes. The Court held that

> (o)n some occasions, Indian tribes may lose some land because of the application of a particular state rule of accretion and avulsion, but it is as likely on other occasions that the tribe will stand to gain. *Id.* at 673, 99 S.Ct. at 2540.[4]

Furthermore, the Supreme Court has announced that state law applies to determinations of title to real property. *State Land Board v. Corvallis Sand & Gravel*, 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977). Arizona law, assuming that the disputed land had accreted to the reservation, would hold that title automatically vested in the Tribe. *Arizona v. Gunther & Shirley Co.*, 5 Ariz.App. 77, 423 P.2d 352 (1967).

The reported case most nearly analogous to the one at issue is *Carlson v. Tulalip Tribe of Washington*, 510 F.2d 1337 (9th Cir. 1975). In *Carlson*, an action was brought against the Tulalip Tribe to quiet title to certain tidelands within the reservation which bordered property owned by the plaintiff. After the United States declined to give its consent to be sued in the action, the case was dismissed. On appeal, the Court stated:

> * * * Because the United States has fee title to unallotted Reservation lands, the dispute involves the fixing of a boundary between lands of the United States and the lands claimed by the plaintiffs. *Id.* at 1339.

The Court further noted that "the United States is a necessary party to any action in which the relief sought might interfere with its obligations to protect Indian lands against alienation." *Id.* at 1339. Since the United States had not consented to joinder in the action, the district court's dismissal was affirmed.

In the present case, the Government's claim that the land which is the subject of this dispute is Indian land is substantial. Furthermore, any action by this Court would involve the fixing of a boundary between lands of the United States and lands claimed by the plaintiff. Accordingly, in the absence of its consent, the United States is immune from suit because the waiver provision of the Quiet Title Act does not apply.

Therefore,

IT IS ORDERED that the United States' Motion to Dismiss the Complaint is granted.

A similar result with respect to land which had accreted to lands owned by the United States was reached in an earlier decision by this Circuit in *Beaver v. United States*, 350 F.2d 4, 8 (9th Cir. 1965).

---

**4.** *See also Fontenelle v. Omaha Tribe of Nebraska*, 430 F.2d 143, 147 (8th Cir. 1970), where the court applied to Indian trust lands "the general rule that lands added by accretion to tracts which were riparian at the time of the official survey and plat is the property of the riparian owner."