Robert C. and Idros R. WILDMAN husband and wife, et al., Plaintiffs,

v.

The UNITED STATES of America, et al., Defendants.

No. CIV 85–863 PCT–CAM.

United States District Court, D. Arizona.

July 3, 1986.

John P. Frank, Dale A. Danneman, Steven J. Labensky & Janet A. Napolitano, Lewis and Roca, Phoenix, Ariz., for plaintiffs.

Larry G. Haddy, Larry G. Haddy, Ltd., Phoenix, Ariz., for Willow Valley Club, McKellips Land Corp.).

Rodney B. Lewis, Sacaton, Ariz., and Dale T. White, Fredericks & Pelcyger, Boulder, Colo., for Ft. Mojave Indian Tribe.

John A. Shannon, Jr., Phoenix, Ariz., for Spirit Mtn. Farms, D. Brown.

Charles D. Wahl, P.C., Phoenix, Ariz., for Mohave Elec. Co-Op., Inc.

F. Patrick Barry, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., and Richard S. Allemann, U.S. Atty.'s Office, for the U.S.A.

William C. Blakley, Mohr Hackett Pederson Blakley Randolph & Haga, Phoenix, Ariz., for Connecticut Mut. Life Ins. Co.

## ORDER

MUECKE, District Judge.

Having received and considered the Fort Mojave Indian Tribe's Motion to Dismiss, filed April 17, 1986; the United States' Motion for Summary Judgment and statement of facts, filed April 30, 1986; Plaintiffs' Response to the Fort Mojave Indian Tribe's Motion to Dismiss and the United States' Motion for Summary Judgment, filed May 19, 1986; Reply Memorandum of Fort Mojave Tribe in Support of Motion to Dismiss, filed June 6, 1986; Reply of the United States on its Motion for Summary Judgment, filed June 13, 1986; United States' Supplemental Memorandum on Motion for Summary Judgment and Tribe's Notification of Supplemental Authority, both filed June 13, 1986; Plaintiffs' Response to Supplemental Authority, filed June 19, 1986, and having heard oral argument on these matters, this Court finds and concludes as follows:

By this action, plaintiffs seek to quiet title to a parcel of property which is a part of "Goat Island," located in the Colorado River stream bed near Needles, California.

Plaintiffs claim an interest in this property as a result of a purchase from the previous owner of land adjoining the Colorado River, Elgin Gates. Mr. Gates' title to the property originated from a 1929 patent from the State of California. The legal description contained in this patent was as follows:

Lots one and two (or the fractional west half of the northeast quarter) and lot three (or the fractional north half of the southeast corner) of fractional Section thirty-six (36) Township ten (10) north, Range twenty-two (22) east, San Bernardino Meridian, containing three hundred fifty-one and ten hundreths (351.10) acres, embraced in Location 4172 Swamp and Overflowed Lands,....

In the grant deed used by Gates to convey the property to the plaintiffs, the language above was inserted, as well as the following limitation: "ALSO EXCEPT therefrom that portion lying Easterly of the mean low water mark on the West bank of the Colorado River." This is a reference to alleged accretions, which consist of the property in dispute herein. This conveyance took place in 1968. Subsequently, in 1969, Gates issued a quit claim deed to the plaintiffs for the portion excepted above, for which he did not receive any consideration. In Gates' first affidavit, dated April 14, 1986, (Exhibit 6 to U.S. Motion for Summary Judgment), he describes the reason for using two deeds:

In 1968, I also agreed to quit claim whatever interest I may have had in the accreted lands to [plaintiffs]. I felt I had some interest in the accreted lands based upon an original survey of the Colorado River, but I was not sure of the extent of the claim. Furthermore, I was aware that if I wanted to clear title to these lands, I would have to litigate. Based upon my familiarity with the area and the confusion regarding ownership of lands along the Colorado in Arizona, I believed that the States of Arizona and California and the United States also claimed a portion of the accreted lands.

I passed this information on to Mr. Robert Richardson, a representative of

the Calzona group. I also informed Mr. Richardson that I could not guarantee title to the accreted lands because of the conflicting claims of the United States and the States of Arizona and California and also because no title company that I was aware of would insure any such title to accreted lands.

\* \* \* \* \* \*

To obtain clear title to these lands I knew I would have to litigate the extent of my claim and challenge the government's conflicting claims. As I was not prepared to initiate a costly and speculative lawsuit, I sold my California lands and quit claimed whatever interest I owned in Arizona. I informed Robert Richardson of Calzona that if the Calzona partnership wanted to litigate title for the Arizona lands they were free to do so.

Approximately fifteen years after obtaining these deeds, plaintiffs seek to quiet title to the parcel of "accreted" land obtained from Mr. Gates by quit claim deed. By their motions, the United States and the Fort Mojave Tribe seek dismissal from this action, claiming that this Court lacks jurisdiction over them and that the plaintiffs' action is barred by the relevant statute of limitations. As the issues presented in the Tribe's motion to dismiss are similar to those contained in the U.S. motion for summary judgment and both rely upon similar facts, this Court will construe both motions as motions for summary judgment.

### JURISDICTION

Pursuant to 28 U.S.C. Section 2409a(a):

The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands, ....

The present case involves the Indian trust exception as the Fort Mojave Tribe, and the United States on their behalf, claim an interest in the property in question. In their interpretation of this section, at least two courts have required that the U.S. prove a "substantial interest" in the property prior to dismissal of the action. *See Spaeth v. United States Secretary of Interior,* 757 F.2d 937, 943 (8th Cir.1985); *Newman v. United States,* 504 F.Supp. 1176 (D.Ariz.1981).

■ Nevertheless, as this Court must strictly construe this waiver of sovereign immunity, *see Block v. North Dakota,* 461 U.S. 273, 298, 103 S.Ct. 1811, 1825, 75 L.Ed.2d 840 (1983), a different conclusion would appear appropriate. A strict reading of Section 2409a does not reveal any congressional intent to place a burden upon the United States or an Indian tribe to prove a "substantial interest" in the land at issue. Further, the placing of such a burden upon the government and/or tribe would appear to defeat the very purpose of the exception to the waiver of immunity, as the government or tribe is then forced to prove its title to establish that the court has no jurisdiction. Accordingly, this court does not follow the *Spaeth* and *Newman* decisions, and finds that where the United States on behalf of an Indian tribe or the tribe itself claims an interest in a disputed parcel, the matter must be dismissed for lack of jurisdiction pursuant to Section 2409a(a).

In a recent decision, the United States Supreme Court discussed this exception: "Thus, when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the Government's immunity." *United States v. Mottaz,* —— U.S. ——, ——, 106 S.Ct. 2224, 2230, 90 L.Ed.2d 841 (1986). In light of this statement, the continued viability of the "substantial interest" test is questionable.

In the present case, there can be no dispute that both the Fort Mojave Tribe and the United States, on behalf of the Tribe, claim an interest in the parcel in question. As discussed above, it would appear that this alone is sufficient to meet

Section 2409a(a), thereby requiring dismissal of these defendants.

Further, even if this Court were to apply the "substantial interest" test, it is clear that the U.S. and Fort Mojave Tribe have satisfied these requirements, thereby entitling them to dismissal. In the record before this Court, there is evidence that the U.S. granted a right-of-way across the property for a pipeline in 1959 and that since 1975, the property has been leased for cultivation purposes. *See* U.S. Exhibits 10, 12 & 14. These activities are consistent with the Tribe's claim of interest in the property and are sufficient to meet the "substantial interest" test. *See Spaeth, supra, Newman, supra.*

Based upon the above, as well as for all of the reasons set forth by the movants, this Court will dismiss this action due to the lack of jurisdiction over the defendants.

## STATUTE OF LIMITATIONS

Even if this Court were to assume *arguendo* that it had jurisdiction, the matter must be dismissed as the plaintiffs are barred by the statute of limitations as set forth in 28 U.S.C. Section 2409a(f). That section provides as follows:

> Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

In his affidavit dated April 14, 1986, Mr. Gates indicated that "[b]ased upon [his] familiarity with the area and the confusion regarding ownership of lands along the Colorado in Arizona, [he] believed that the States of Arizona and California and the United States also claimed a portion of the accreted lands." Exhibit 6 to U.S. Motion,

at Par. 5. He went on to state that "I was also aware in 1969 that the United States and possibly the Indians also may have had claim to the accreted lands. To obtain clear title to these lands I knew I would have to litigate the extent of my claim and challenge the government's conflicting claims." *Id.*, at Par. 6.

■ This action was not filed until March 28, 1985, approximately sixteen (16) years after the purchase of the property by the plaintiffs. In his affidavit of April 14, 1986, Mr. Gates indicates that he notified the purchasers of the conflicting claims to the accreted lands and the reasons for using a quit claim deed. Upon the basis of the record before this Court, it would appear that the twelve-year statute of limitations, as set forth in 28 U.S.C. Section 2409a(f), has run, thereby precluding the plaintiffs' action.

In their response to the motions, plaintiffs submit a supplemental affidavit of Mr. Gates dated May 6, 1986,[1] (*see* Exhibit D., Plaintiffs' Response), contending that Mr. Gates did not have sufficient knowledge of a claim by the U.S. to the accreted lands. This Court finds this contention to be unpersuasive.

The Ninth Circuit has indicated that Section 2409a is to be construed strictly. *See State of California v. Yuba Goldfields,* 752 F.2d 393, 396–97 (9th Cir.1985). Further, a communication of the government's claim need not be clear and unambiguous and a showing of adversity is not required. *Id.* As set forth in *Lee v. United States,* 629 F.Supp. 721, 727 (D.Alaska 1985):

> [t]he statutory period began to run when the [plaintiffs] reasonably should have known that the United States had a conflicting claim to the lands they sought, regardless of how strong they believed the claim to be. *See Guam [vs.*

---

1. Although there was discussion at the hearing on this matter concerning the creation of a material question of fact by these two affidavits submitted by Mr. Gates, this Court finds that in regard to the issue of Mr. Gates' knowledge that he did not have quiet title in the accreted lands due to conflicting claims by the U.S. and/or the

Tribe, there are no genuine issues of material fact precluding summary judgment. In this regard, the second affidavit does not contradict the first and further, the second affidavit clearly describes its function as merely to clarify the first affidavit, rather than to correct or alter it.

*United States,* 744 F.2d 699 (9th Cir. 1984) ], 744 F.2d at 701; *Nevada [vs. United States,* 731 F.2d 633 (9th Cir. 1984) ] 731 F.2d at 635.

In a case almost identical to the one presently before this Court, it was found that the statute of limitations had run:

> The one thing that is perfectly clear is that [the plaintiff] knew that he did not have quiet title to the disputed lands. * * His activities through the years have established that [plaintiff] knew who held the title to the lands on the other side of the disputed strip, and that if the title was unclear, he would know who the adverse claimant likely would be.

*Chesney v. United States,* 632 F.Supp. 867, 870 (D.Ariz.1985). There can be no dispute in the present matter that Gates knew of the possibility of a conflicting claim and that he did not have quiet title to the accreted land. His transactions regarding these properties, i.e. giving a grant deed on the government lots and subsequently giving a quit claim deed on the accreted portion, without receiving any consideration, *see* U.S. Exhibit 6, Gates' Affidavit, and Exhibits B, C & D attached thereto, support Gates' statement that he knew he would have to litigate this parcel to challenge the government's claim.

Further, Gates indicated in his affidavit that he passed this information along to the plaintiffs upon their purchase of the land. *See* Gates Affidavit, dated April 14, 1986, at Par. 5. Accordingly, this Court finds that Gates knew or reasonably should have known of the government's claim no later than 1969. Therefore, based upon the above, as well as all of the reasons set forth by the movants, this action is barred by the twelve-year statute of limitations as set forth in 28 U.S.C. Section 2409a(f).

Based upon the foregoing,

IT IS ORDERED that the Fort Mojave Indian Tribe's Motion to Dismiss, filed April 17, 1986 and the United States' Motion for Summary Judgment, filed April 30, 1986, both treated as motions for summary judgment, are granted.