**SHIVWITS BAND OF PAIUTE INDI-ANS; and Kunz & Company d.b.a. Kunz Outdoor Advertising, a California Corporation, Plaintiffs and Counter-claim Defendants,**

v.

**State of UTAH, Utah State Department of Transportation, and St. George City, a Utah Municipal Corporation, Defendants and Counter-claim and Third–Party Plaintiffs,**

v.

**Bruce Babbitt, in his capacity as Secretary of the United States Department of the Interior; Ada Deer, in her capacity as Assistant Secretary of Indian Affairs; Walter R. Mills, in his capacity as Area Director of the Bureau of Indian Affairs; and the Bureau of Indian Affairs, Third–Party Defendants.**

No. 2:95CV1025C.

United States District Court,
D. Utah,
Central Division.

Feb. 6, 2002.

---

D. Williams Ronnow, St George, UT, John J. Walton, Washington County Attorneys Office, St George, UT, Dale T. White, M. Evelyn Woods, John Fredericks, III, Fredericks Pelcyger Hester & White, Louisville, CO, Randall N Skanchy, Salt Lake City, UT, for Shivwits Band of Paiute Indians, Kunz & Co.

Philip C Pugsley, Utah Attorney General's Office, Salt Lake City, UT, Michael M Quealy, Utah Attorney General's Office, Salt Lake City, UT, Jonathan L. Wright, St George City Prosecutor, St George, UT, Barbara G Hjelle, St George, UT, Ralph L Finlayson, Governors Office, Salt Lake City, UT, for State of Utah, Utah Dept. of Transportation, St. George City.

Stephen L. Roth, U.S. Attorney's Office, John K Mangum, Salt Lake City, UT, for Bruce Babbitt, Ada Deer, Walter R. Mills.

## ORDER

CAMPBELL, District Judge.

This matter is before the court on Defendants' motions to vacate order of preliminary injunction and for summary judgment. The court held a hearing on these motions on October 24, 2001. Defendants currently move to vacate this court's earlier preliminary injunction order, which prevented them from regulating the use of the land at issue in this suit. They also seek summary judgment on the question of State and local land regulation, arguing that the land is neither held in trust for the tribe nor that it is "Indian Country," either of which designation could prohibit State regulation. For the reasons discussed below, Defendants' motions to vacate and for summary judgment are DENIED.

### Background

The relevant material facts to the underlying dispute in this matter remain unchanged from those before the court when it issued its August 11, 2000 order. This case involves the purchase and subsequent leasing of property adjacent to Interstate Highway 15 within the St. George, Utah limits ("subject property"). On July 16, 1993, Plaintiff Kunz and Company, doing business as Kunz Outdoor Advertising ("Kunz"), contacted Plaintiff Shivwits Band of Paiute Indians ("Shivwits") and proposed a business venture (Kunz and Shivwits are hereinafter collectively referred to as "Plaintiffs"). Kunz proposed that the Shivwits purchase the subject property with money furnished by Kunz. In exchange, the Shivwits would agree to lease the subject property back to Kunz on favorable terms.[1] The Shivwits agreed to the proposal, were advanced money by Kunz, and bought two pieces of land on August 9, 1994. The land is located in Defendant St. George City, which is a long distance from the Shivwits Reservation. There is no activity on the land other than the outdoor advertising. On the same day,

---

1. The lease transaction involves no payment to the Shivwits for fifteen (15) years and small ($2,500 per year) payments for the next five years.

August 9, 1994, the Shivwits conveyed, by Special Warranty Deed, the subject property to the United States to be held in trust for the Shivwits. (*See* Special Warranty Deed, attached as Ex. B to the Complaint.) The United States therefore holds title to the land by virtue of this deed.

An off-reservation trust acquisition, like the one at issue here, however, must be approved by the Department of the Interior. On May 10, 1995, Shivwits, through the Bureau of Indian Affairs ("BIA"), submitted the necessary administrative documents for approval of the trust acquisition. The request that the property be accepted in trust was approved on August 31, 1995, by the local office of the BIA. Following acceptance of the subject property in trust, the parties entered into five separate leases covering the subject property. After an environmental assessment of the proposal as required by the National Environmental Policy Act of 1969, 42 U.S.C. § 4332 ("NEPA"), which concluded with a Finding of No Significant Impact ("FONSI"), the Secretary of Interior approved the lease arrangement on September 11, 1995.[2]

No one disputes that under State (Utah Outdoor Advertising Act, Utah Code Ann. § 27–12–136.1)[3] and local law (a St. George ordinance, St. George City Code, Title 9, chapter 8),[4] the placement of billboards on the subject property would be unlawful. Plaintiffs argue that the billboards are exempt from these laws because the subject property is being held by the United States in trust for the Shivwits.

On October 25, 1995, the Utah Attorney General's office, on behalf of the Utah Department of Transportation ("UDOT"), threatened criminal suit against Kunz if construction of the signs did not immediately cease. Kunz ignored the warning and continued construction. On November 3, 1995, St. George City issued a stop work order, forbidding Kunz from further construction of the signs on the ground that it violated city and State outdoor advertising regulations and Kunz had no city or State sign permits. On November 17, 1995, Plaintiffs jointly sued for declaratory judgment and preliminary and permanent injunctive relief against the State of Utah, the Utah State Department of Transportation, and the City of St. George (collectively referred to herein as "Defendants"). On November 22, 1995, Defendants jointly filed an Answer, Counterclaim and Third–Party Claim against the Shivwits, Kunz, and the United States. The counterclaim and third-party claim allege that 25 U.S.C. § 465, the statute authorizing land acquisitions, is unconstitutional, the taking of the land in trust and the approval of the lease was wrongly accomplished, and that the land is subject to State and local regulations.

This court issued a preliminary injunction, dated February 7, 1996, which prohibited the Defendants from imposing any stop work order or otherwise interfering with the construction or use of the billboards. Protected by this injunction, Kunz erected five large billboards on the

---

2. The approval of the Secretary of the Interior of the lease arrangement was necessary to give the leases effect. *See* 25 U.S.C. § 415.

3. The statute designates certain areas where outdoor advertising may be placed, and the proposed location does not meet the requirements of any of those exceptions. In addition, the signs violate State law because Plaintiffs lack a valid State permit as required by Utah Code Ann. § 27–12–136.7(1). The

placement or maintenance of the signs would be a criminal misdemeanor under Utah Code Ann. § 27–12–136.12.

4. St. George Code §§ 9–8–4(B)(4) and 9–8–2(Q) govern off-premise signs. The Plaintiffs' signs violate these Code sections in that they violate spacing requirements and would not meet any of the exceptions for allowance of signs.

subject property and the billboard space has been leased by Kunz to various advertisers. The billboards continue to be used by Kunz. Subsequent to the preliminary injunction order, the court issued an order on August 11, 2000, which held that 25 U.S.C. § 465 is, in fact, constitutional, but also held that the BIA had failed to follow the procedural requirement of NEPA before making the *decision* to hold the land in trust. That order did not affect the fact that the government held the land in trust by special warranty deed, but it did invalidate the agency's decision to take the land in trust until the BIA complied with the procedural requirements of NEPA.

The Defendants' present motions to vacate preliminary injunction and for summary judgement are based on an argument that the billboards should not have been there to begin with for two alternative reasons: 1) that the court's August 11, 2000 order invalidated any trust relationship regarding the land, *de facto* and *de jure*, and that therefore the Shivwits hold the land as any other entity (rather than the government holding it in trust for the Shivwits) and that therefore the State's and local municipalities' zoning and land use restrictions apply; and 2) that even if the court finds that the government holds the land in trust, the land is not "Indian Country" and therefore State and local land use restrictions apply.

Regarding the first ground for summary judgment outlined above, because the Indian Lands exemption in Quiet Title Act, 28 U.S.C. § 2409a(a) ("QTA"), applies, the government is immune from questions to the title presently at issue. Regarding the second ground for summary judgement argued by the Defendants, the issue as presently postured is not ripe because the BIA has not completed the NEPA process as was mandated the August 11, 2000 order, and therefore there is no final agency decision which settles the status of the land at issue. As discussed below, the court may not rule on the merits of the second argument supporting summary judgement because those issues are not ripe and doing so would be to render an advisory opinion, which the United States Constitution prohibits.

## Analysis

A. *Does the Quiet Title Act Prohibit Judicial Review, thereby Suggesting that the Matter be Deferred Until the Presently Ongoing NEPA Process is Complete?*

■ The initial question posed by Defendants' motions is: what effect, if any, did the court's August 11, 2000 order have on the title already possessed by the government by virtue of the special warranty deed? The answer to this question is: "none." This answer results from the distinction between two government actions present here, both of which have direct bearing on this matter: 1) the government *holding* title to Indian lands (which it already does in this case *de facto* by virtue of the special warranty deed); and 2) the agencys' (the BIA and the Department of Interior) action of *approving* the trust application. The latter action requires that the agency undertake the NEPA process as the August 11, 2000 order mandated; the former is not subject to judicial review because the Indian lands exemption of the QTA renders the government immune from suit from third parties (here, the Defendants) who challenge the government's title to Indian lands.

There is one glaring fact in this case: right now, the United States holds title to the land by warranty deed. As far as the title issue goes, the Defendants' argument rests on the assumption that the transfer was invalid at its inception because of the NEPA violation, and therefore the Shivwits, not the government, now hold

**1250**

title. Implicitly, if not explicitly, then, the relief for which Defendants ask depends, in part, upon this court first quieting title.

█ It is a well-established rule that the United States is immune from suit unless Congress expressly waives immunity. *See United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818 (10th Cir.1981). Although the Defendants filed their claims against the Secretary of the Interior and his agents, in their official capacities, the claims truly run against the United States because Defendants' claim rests on a title determination and the United States holds title by virtue of the special warranty deed. The only statute cited by the Defendants to support their claim that there has been a waiver of sovereign immunity is the Administrative Procedure Act, 5 U.S.C. § 702 ("APA").[5] Although the Government does not dispute that the APA generally waives sovereign immunity, the government argues that this general waiver of sovereign immunity is superseded by the QTA, which preserves immunity in the case of suits challenging the title to "trust or restricted Indian lands" held by the United States.[6]

On the issue of immunity, both Plaintiffs and Defendants are, in part, correct. The Defendants are correct that the APA's procedural protections apply here and allow judicial review of the decision to approve the taking of land into trust (which requires NEPA compliance as recognized and mandated in the court's August 11,

2000 order). But the government is correct that its right to hold title in trust is unreviewable under the QTA. Therefore, although the BIA must complete the NEPA process, the title to the property remains with the government in trust for Shivwits.

The government correctly argues that this case is similar to *Florida Dept. of Business Regulation v. Dept. of Interior,* 768 F.2d 1248 (11th Cir.1985), in which the court found no waiver of immunity from suit. In that case, an Indian tribe purchased certain lands containing Indian burial remains with the purpose of preserving the remains and establishing a museum. The United States, as here, took the property into trust by virtue of a deed. Along with the museum, the tribe opened a smoke shop, selling cigarettes tax free to the general public. The State of Florida sought to have the trust decision overturned under the APA on the grounds that the Secretary of the Interior had violated that law by failing to follow the Department's regulations when acquiring the land in trust. The Eleventh Circuit Court of Appeals upheld the dismissal on the grounds that the district court lacked jurisdiction to hear the case. The appellate court held that although the suit was "technically not one to quiet title, ... Congress' decision to exempt Indian lands from the waiver of sovereign immunity impliedly forbids the relief sought here." *Id.* at 1254.

---

5. In relevant part, 5 U.S.C. § 702 says:

An action [in federal court] seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority, *shall not be dismissed nor relief therein be denied on the ground that it is against the United States* or that the United States is an indispensable party.
*Id.* (emphasis added).

6. In relevant part, 28 U.S.C. § 2409a(a) says:

The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section *does not apply to trust or restricted Indian lands* . . . .
*Id.* (emphasis added).

The Defendants argue that the Tenth Circuit decision *McAlpine v. United States,* 112 F.3d 1429 (10th Cir.1997), rejects the Eleventh Circuit's reasoning in *Florida* and demonstrates that the QTA is not a barrier to issue of title presently before this court. In *McAlpine,* the Tenth Circuit considered a case where a Native American sued the United States and BIA after his request that land be taken into trust was denied. The *McAlpine* Court then concluded that the Secretary of Interior's *denial of acquisition* of land to be held in trust is reviewable under the APA. *See McAlpine,* 112 F.3d at 1435. This guidance from the Tenth Circuit, however, is not helpful to answer the legal issue here. As the government points out, *McAlpine* deals with a situation where the United States *did not* acquire title; this case deals with the situation where the United States *did* in fact acquire title. The acquisition of title divests this court of jurisdiction to challenges to the United States' right to title as the *Florida* Court recognized. *See Florida,* 768 F.2d at 1254–55.

 Several federal courts treating similar issues have made similar distinctions. With regard to the QTA Indian lands exemption generally, "[a]s long as the United States has a 'colorable claim' to a property interest based on that property's status as trust or restricted Indian lands, the QTA renders the government immune from suit." *State v. Babbitt,* 75 F.3d 449, 451–52 (9th Cir.1995) *cert. denied* 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996) [hereinafter *"Alaska I"*]. In addition, the question of whether the government has a colorable claim "extends no further than 'a determination that the government had some rationale,' and that its position 'was not undertaken in either an arbitrary or frivolous manner.'" *Alaska v. Babbitt,* 182 F.3d 672, 675 (9th Cir.1999). Such a limitation is consistent with the rule that "[t]he immunity of the government applies whether the government is right or wrong. The very purpose of the doctrine is to prevent a judicial examination of the merits of the government's position." *Wildman v. United States,* 827 F.2d 1306, 1309 (9th Cir.1987). Not only does the present case deal with facts quite different from those in *McAlpine,* it deals with facts that clearly show that the government now holds title by virtue of a special warranty deed, a document surely signifying at least a "colorable claim."

The Indian lands exception to the QTA bars the State's claim in this case even though the State claims the right to regulate the lands in question, because, as discussed above, underlying the State's claim is a challenge to the government's title to the land. *See Rosette Inc. v. United States,* 141 F.3d 1394 (10th Cir.1998); *Shawnee Trail Conservancy v. United States Dept. of Ag.,* 222 F.3d 383 (7th Cir.2000). Moreover, while no parties cite these cases, there are cases in which the Indian Lands exemption under the QTA was held to apply even though it was unclear whether the land was, or ultimately would be, held in trust for Indians. *See, e.g., Mashpee Tribe v. New Seabury Corp.,* 427 F.Supp. 899, 903 (D.Mass.1977) (finding that government had not waived immunity even if it had not been determined that the land at issue is "trust or restricted Indian lands" within meaning of QTA exemption provision); *accord State of Alaska v. Babbitt,* 38 F.3d 1068 (9th Cir.1994) [hereinafter *"Alaska II"*]. Indeed, other courts have explicitly held that "Congress did not intend to waive its sovereign immunity with respect to quiet title action in cases which *would* impact on Indian ownership rights." *Newman v. United States,* 504 F.Supp. 1176, 1178 (D.Ariz.1981) (emphasis added). In *Newman,* the court found irrelevant the fact that there had been *no definative prior determination* of

whether the disputed land was "trust or restricted Indian lands" with regard to the issue of whether the government enjoyed immunity under statute; rather the court found that the claim to title asserted by the government merely had to be substantial. *Id.* at 1178–79. As such, the Indian lands exemption to the QTA prohibits disturbing the government's holding title, even though the procedural posture of this case has mandated that the BIA conduct NEPA review before issuing a decision to hold the title in trust.

■ Admittedly, there is an ambiguity or tension in the distinction between the act of the government holding title and the act of the BIA deciding to hold the land in trust. Under binding Supreme Court and Tenth Circuit precedent, however, such tensions and ambiguity do not suggest a different disposition of the matter and, indeed, suggest rather that such ambiguities are resolved in favor of the Shivwits. "The canons of construction applicable in Indian law are rooted in the unique trust relationship between the United States and the Indians." *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985) (quotation marks, citation, and alteration omitted). In issues arising under Indian law, "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Id.* citing *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 174, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *Choate v. Trapp,* 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941 (1912); *United States v. 162 MegaMania Gambling Devices,* 231 F.3d 713, 718 (10th Cir.2000); *Newman,* 504 F.Supp. at 1178–79. Interpreting the QTA as the courts above suggest is not only supported by these canons of statutory interpretation, but also by the legislative intent behind the Indian lands exception to the QTA. That history demonstrates that Congress intended to prevent prejudice to In-

dian rights and to prevent the abridgment of "the historic relationship between the Federal Government and the Indians without the consent of the Indians." Quiet Title Act, Pub.L. 92–562, 1972 U.S.Code Cong. & Admin. News, pp. 4547, 4557. As the *Newman* court put it: "It is clear, therefore, that Congress did not intend to waive its sovereign immunity with respect to quiet title action in cases which *would* impact on Indian ownership rights." 504 F.Supp. at 1178 (emphasis added).

In sum, therefore, the Indian lands exception to the QTA bars disturbing the government's title in trust to the subject property in dispute. This finding leaves the matter in the following situation. The government's *claim* to title in trust remains undisturbed (indeed barred from judicial review by the QTA). Nevertheless, under the APA, the decision by the BIA to accept the land in trust is subject to judicial review under NEPA. Thus, the procedural requirements mandated by the August 11, 2000 order still stand, as does the court's preliminary injunction order. The Defendants' remedy is largely procedural. Defendants cannot challenge the status of the title in trust, as prohibited by the QTA. However, Defendants may challenge the procedures taken in reaching the *decision* by the BIA to hold the land in trust, as recognized in the court's previous order. The Defendants' remedies are limited, as is legally proper, to procedural protections and their rights, as the law dictates, find voice and representation in the NEPA process and APA review.

B. *Defendants' Remaining Arguments Supporting Summary Judgment are Not Ripe and are Barred by the Abstention Doctrine which Prohibits the Court from Issuing Advisory Opinions*

■ Defendants alternatively seek summary judgment on the issue of State and

local land regulation, arguing that the land is neither held in trust for the tribe nor that it is "Indian Country," either of which designation might prohibit State regulation of the land. While the issue of title, as discussed above, is settled by the QTA, the issue of the State's right to regulate cannot be answered at the present time because the Department of the Interior and the BIA have not made a decision regarding whether the land will be held in trust. Thus, at present, it is impossible for the court to determine with certainty whether the land is held (or will be held) in trust or whether it is "Indian Country" under the legal definition of that term.

 The United States Constitution limits this court's jurisdiction to those involving actual "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. The Constitution's case and controversy requirement prevents this court from issuing "advisory opinions" and from considering cases issues which are not ripe. *See Public Service Company of Colorado v. United States Environmental Protection Agency,* 225 F.3d 1144, 1148 n. 4 (10th Cir.2000) (discussing prohibition against advisory opinions); *United States v. Chavez–Palacios,* 30 F.3d 1290, 1292–93 (10th Cir.1994) (same); *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995) (discussing ripeness requirement); *Initiative and Referendum Institute v. Walker,* 161 F.Supp.2d 1307, 1310–11 (D.Utah 2001) (same).

For the court to make the factual determination on the actual status of the land for regulatory purposes-as Indian Country, as Native held non-Indian Country, or as trust land (any of which category may or may not subject the land to State and local regulation)-the court must first know what the final decisions of the BIA and the Secretary of the Interior are, and this information is unavailable to the court until the NEPA process is complete. The

question of whether the Defendants may regulate the land is therefore not ripe, and the court is unable to issue an opinion on this line of argumentation due to the Constitution's prohibition of the issuance of advisory opinions.

### Order

For the reasons set forth above, Defendants motions to vacate preliminary injunction order and for summary judgment are DENIED.