INITIATIVE AND REFERENDUM
INSTITUTE, et. al, Plaintiffs,

v.

Olene WALKER, et. al, Defendants.

No. 2:00CV00837C.

United States District Court,
D. Utah,
Central Division.

Sept. 11, 2001.

Robert R. Wallace, Lisa J. Watts Baskin, Plant Wallace Christensen & Kanell, Salt Lake City, UT, for plaintiffs.

Jerrold S. Jensen, Utah Attorney General's Office, Salt Lake City, UT, Thomas D. Roberts, Utah Attorney General's Office, Salt Lake City, UT, for defendant.

John D. Ray, Jon C. Martinson, Fabian & Clendenin, Salt Lake City, UT, Richard G. Wilkins, Holme Roberts & Owen LLP, Salt Lake City, UT, for Utah Wildlife Federation, Utah Foundation for North American Wild Sheep, Sportsmen for Fish and Wildlife, Utah Farm Bureau Federation, Utah Bowman's Association, Mike Styler, Hal L. Black, Terry Messmer, Cindy Labrum, Ken Jones, Karl Malone, and Charles C. Edwards.

## ORDER

CAMPBELL, District Judge.

In this matter Plaintiffs move the court to hold that a recent amendment to the Utah Constitution is facially unconstitutional under the United States Constitution and that it violates certain other provisions of the Constitution of State of Utah. Plaintiffs-who include the Initiative and Referendum Institute, the federal and state Humane Societies, various environmental groups, and Utah voters and politicians (collectively "Plaintiffs")-challenge the facial constitutionality of the following recent amendment to the Utah Constitution (the "Amendment"), noted in boldface type:

*Article VI, Section 1* [Power vested in Senate, House and People]

The Legislative power of the State shall be vested:

1. In a Senate and House of Representative which shall be designated the Legislature of the State of Utah.

2. In the people of the State of Utah, as hereinafter stated:

The legal voters or such fractional part thereof, of the State of Utah as may be provided by law, under such conditions and in such manner and within such time as may be provided by law, may initiate any desired legislation and cause the same to be submitted to a vote of the people for approval or rejection, or may require any law passed by the Legislature (except those laws passed by a two-thirds vote of the members elected to each house of the Legislature) to be submitted to the voters of the State before such law shall take effect. **Legislation initiated to allow, limit, or prohibit the taking of wildlife or the season for or method of taking wildlife shall be adopted upon approval of two-thirds of those voting.**

Utah Const. Art. VI § 1. This Amendment passed as Proposition 5 and went into effect January 1, 1999.

Among other things, Plaintiffs' complaint contends: 1) that the Amendment abridges their First Amendment right to speech (and to petition the government); 2) that the language of the Amendment is overly broad; and 3) that it violates equal protection (both because it grants greater voting strength to those who want to pass initiatives on non-wildlife issues and because it singles out a named group-apparently those interested in taking wildlife or opposing the taking of wildlife). Plaintiffs also brings similar claims based on various provisions of the Utah Constitution. While it is somewhat unclear from Defendants' briefs, Defendant moves to dismiss based on two grounds: (1) that there are jurisdictional deficiencies in this matter, namely: a) that plaintiffs lack standing, and b) that the matter is not ripe; and (2) that Plaintiffs have failed to state a claim regarding their First Amendment challenge to the Amendment.

### *Analysis*

*A. Standing*

█ Plaintiffs clearly have standing to bring this suit. The Tenth Circuit has adopted the standing requirements provid-

ed for in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992):

> First, the Plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... traceable to the challenged action of the defendant, and not the result [of] the independent action of some third party not before the Court. Third, it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision.

*Bear Lodge Multiple Use Ass'n v. Babbitt,* 175 F.3d 814, 821 (10th Cir.1999).

Looking at the first *Lujan* element, that Plaintiffs must have suffered an injury in fact, Defendants contend that Plaintiffs lack standing because they have not participated in a initiative drive since the passage of the Amendment. Therefore, according to Defendants, Plaintiffs have not suffered an "injury in fact." However, Plaintiffs have demonstrated through a number of affidavits that they have used the initiative process often in the past and are likely to in the future. *Lujan* involved a challenge to the Secretary of the Interior's alleged failure to enforce an Endangered Species Act mandate that he confer with other agencies to ensure the Act's enforcement. *See* 504 U.S. at 562–63, 112 S.Ct. 2130. The *Lujan* plaintiffs wanted the Secretary to stop funding of an overseas project because it would have caused an impact on endangered species in another country. *See id.* at 562–64, 112 S.Ct. 2130. The *Lujan* Court found that plaintiffs lacked standing because they failed to demonstrate that they had or definitely would visit the area (Justice Scalia suggested that buying a ticket to go there would have been sufficient to give plaintiffs standing). *See id.* at 567 n. 3, 572–72, 112 S.Ct. 2130. In contrast to the *Lujan* Plaintiffs, Plaintiffs here have demonstrated that they have and will continue to use the initiative process burdened by the Amendment. Because they have used the process in initiative process in the past, Plaintiffs in this case have sufficiently demonstrated that they are within the class of people who are injured if it is found that the Amendment violates constitutional rights to speech and equal protection.

The second *Lujan* element-the necessity of a causal connection between the claimed injury and the conduct complained of-is also satisfied in this case. If the Amendment is unconstitutional, then Plaintiffs' injury is directly traceable to the existence of the Amendment. Finally, if the Amendment is found to violate Plaintiffs rights to Free Speech and Equal Protection, then the court action of nullifying the Amendment satisfies the final *Lujan* element of redressability. Having demonstrated that they have met these three *Lujan* requirements, Plaintiffs have standing to bring this suit.

### B. Ripeness

In general:

the question of whether a claim is ripe for review bears on a court's subject matter jurisdiction under the case or controversy clause of Article III of the United States Constitution. The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1).... It is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute.... A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficien-

cy by relying on affidavits or any other evidence properly before the court. It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.

*New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995) (internal quotations and citations omitted).

██ Defendants contend that the fact that there is no current or planned referendum shows that the case is not ripe for consideration. They further argue that Plaintiffs would only have a claim if they had an initiative on the ballot that failed because it received more than half and less then two thirds of the vote-thus failing under the terms of the Amendment. This argument confuses a facial for an as-applied challenge to the constitutionality of the Amendment. Plaintiffs have a ripe facial challenge because they do not need to wait until the law is actually applied to challenge its facial constitutionality. Part of the relief sought in this suit is declaratory in nature and the Tenth Circuit Court of Appeals has clearly held that a party whose interest could be affected by the questionable legality of an enacted law need not wait until the law is actually applied to them in order to challenge its legality. "[A] plaintiff may seek declaratory relief before actual harm occurs if she has a reasonable apprehension of that harm occurring." *United States v. Colorado Supreme Court,* 87 F.3d 1161, 1166 (10th Cir.1996) (holding that federal prosecutors need not await actual imposition of ethical rules to challenge rules' legality); *see also ANR Pipeline v. Corporation Commission of Oklahoma,* 860 F.2d 1571, 1578 (10th Cir.1988) ("Parties need not await … the imposition of … an unconstitutional enactment in order to assert their constitutional claim for an injunction in federal court. Once the gun has been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes to invoke the Declaratory Judgment Act"). Here, regardless of ultimate success on the merits of their First Amendment claim, Plaintiffs apprehension regarding the effect of the Amendment on their ability to use the initiative and referendum process is "reasonable." *Colorado Supreme Court,* 87 F.3d at 1166.

██ As a general rule, determinations of ripeness are guided by a two-factor test, " 'requiring us to evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration.' " *Sierra Club v. Yeutter,* 911 F.2d 1405, 1415 (10th Cir.1990) (*quoting Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In determining whether an issue is fit for judicial review, the central focus is on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532 at 112. To this end, courts frequently focus on whether a challenged government action is final and whether a determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed. *See Sierra Club,* 911 F.2d at 1415. In assessing the hardship to the parties of withholding judicial resolution, the inquiry "typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties." *New Mexicans,* 64 F.3d at 1499 (internal quotations omitted).

██ However, in cases involving First Amendment challenges to state laws, ripeness standards are relaxed. The Tenth Circuit has characterized the ripeness of a facial challenge involving First Amendment protections in the following way:

The customary ripeness analysis outlined above is, however, relaxed somewhat in circumstances such as this where a facial challenge, implicating First Amendment values, is brought. Thus, while it is true that "the mere existence of a statute ... is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms," in the context of a First Amendment facial challenge, "[r]easonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim." The primary reasons for relaxing the ripeness analysis in this context is the *chilling effect that potentially unconstitutional burdens on free speech may occasion:*

> First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss. In a wide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill.

13A Wright, Miller & Cooper, Federal Practice and Procedure § 3532.3 at 159.

> Thus, our ripeness inquiry in the context of this facial challenge ... focuses on three elements: (1) hardship to the parties by withholding review; (2) the chilling effect the challenged law *may have* on First Amendment liberties; and (3) fitness of the controversy for judicial review. Our ripeness inquiry is not to be applied mechanically but rather, with flexibility.

*New Mexicans,* 64 F.3d at 1499–1500 (emphasis added).

In *New Mexicans,* the Tenth Circuit held that Congressman Richardson need not wait until the enforcement of criminal penalties under a statute that forbade the use of funds collected in a federal election campaign in a campaign for state office. Richardson was not running for a state office, but said that he might, and therefore brought a facial challenge to the statute for abridging his political speech. The Plaintiffs in this case are similarly situated.

Under the rule announced in *New Mexicans,* Plaintiffs must first allege a hardship they would suffer absent judicial review. *See* 64 F.3d at 1500. Here, Plaintiffs are suffering a hardship if the Amendment is unconstitutional because they would be required to meet a higher burden to pass an initiative. Therefore, they will face a hardship absent judicial review because they would face, for example, higher costs in getting an initiative passed because they would have to lobby larger numbers of voters.

■ Plaintiffs have also demonstrated the chilling effect the challenged law *may have* on First Amendment liberties-the second element of *New Mexicans. See id.* Defendants argue that no Free Speech rights are diminished by the Amendment and that therefore the case is not ripe because there is no "chilling effect." This argument is misplaced. The requirement is only "may have," and therefore it would be inappropriate to dismiss the case on ripeness grounds because one might that find the Free Speech claim is not meritorious. *New Mexicans,* 64 F.3d at 1500. In other words, although Plaintiffs might lose their First Amendment claim on the merits, such does preclude a challenge on ripeness grounds.

Finally, the third element regarding whether the present controversy is fit for review is also met. Plaintiffs' challenge to the Amendment is a facial challenge and thus places a purely legal question before the court. Defendants argue that it is not

fit for review because no one has pursued an initiative since the Amendment's adoption. This, again, merely confuses the issue. Defendants are in essence arguing that Plaintiffs must wait to bring an as-applied challenge. If Defendants are correct, no facial challenges to laws could ever be brought. Because Plaintiffs present a purely legal question, and because they seek declaratory relief, the matter is fit for judicial review.

## C. Free Speech

 Plaintiffs argue that the fact that a higher number of votes are required to pass initiatives in effect causes an impermissible "chilling effect" on political speech. In essence, they claim that because the Amendment singles out wildlife taking laws for a two-thirds burden, it effects an impermissible viewpoint and/or content-based restriction. They contend that the mere existence of the Amendment's more-than-majority requirement restricts core political speech.

 Defendants (and Amici) are correct in observing that Plaintiffs' First Amendment claim fails because Plaintiffs believe that their First Amendment rights are broader than they actually are. The First Amendment certainly protects core political speech and prohibits governments from making it difficult for people to talk to each other about political issues. *See e.g., Campbell v. Buckley,* 203 F.3d 738, 744–45 (10th Cir.2000). But the Amendment to the Utah Constitution works no such restriction. It makes it more difficult to pass a wildlife initiative, but it does not prohibit people from talking about such issues at all. Moreover, depending on the nature of any future wildlife initiative-whether it seeks to expand or limit wildlife management-the Amendment would not even affect environmental plaintiffs' so-called "viewpoints" at all. For example, environmentalists themselves are in no

way a uniform "perspective" and one environmentalist may, in fact, differ on the issue of whether more or fewer elk should be allowed to be killed in a given hunting season. One may support more hunting because of the burden that elk themselves put on other species, while another environmentalist may say that hunting should never be allowed. None of these hypothetical persons are prohibited from voicing their opinion on the matter by Utah's constitutional Amendment. The First Amendment certainly prohibits government restriction of political speech, but it does not guarantee the right to win an election issue, and no case cited by Plaintiffs suggest otherwise.

All of the cases cited by Plaintiffs stand for the proposition that the government cannot restrict the ability of citizens to pass their political messages among each other. Both the Tenth Circuit and the Supreme Court have struck down laws which unduly burdened the process of actually getting a message circulated among the public. For example, both courts have invalidated the following in Colorado: 1) a criminal prohibition on paying petition circulators; 2) a requirement that all circulators be registered voters; 3) a requirement mandating that proponents must disclose the identities of paid circulators as well as the amount which they were paid; and 4) requirements that paid circulators wear identification badges. *See Campbell,* 203 F.3d at 744–45 (reviewing cases). The difference between those cases and the present one is that these are actual, indeed physical, requirements that could effect the actual passing of one's political message. Such is not the case here. Plaintiffs can initiate and circulate petitions; they can engage in political discussions for or against any initiative; and they raise money for and publically lobby for any initiative they bring to the ballot. As the Tenth Circuit

itself has suggested, if a state wants to make it more difficult to pass an initiative, it may certainly do so. *See Brady v. Ohman,* 1998 WL 438789 at *3 (10th Cir. 1998).

■ Plaintiffs also argue that the Amendment is an unconstitutional instance of viewpoint or content-based discrimination. If governmental action discriminates against speech based on viewpoint or content, it is subject to the strictest scrutiny. *See, e.g., Rosenberger v. Rector and Visitors of the Univ. of Va.,* 515 U.S. 819, 829–30, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); *see also Summum v. Callaghan,* 130 F.3d 906, 917 (10th Cir.1997). It is certainly true that the Amendment circumscribes wildlife legislation for super-majority requirements, but it is not discriminatory of any particular viewpoint. In this instance, no viewpoint or content is subject to discrimination or occlusion from public discussion; thus, Utah's Amendment does not run afoul of First Amendment protections. As discussed above, "people interested in wildlife" or environmentalists are not homogeneous groups and being a member of one of these groups does not suggest that one would have a discreet "viewpoint." While the Amendment makes it more difficult for those who entirely oppose hunting to stop it, finding that such a measure is unconstitutional viewpoint discrimination would, for example, automatically give a constitutional claim to every tax protester in any state that requires super-majorities to change tax laws. Such super-majority requirements do not occlude any viewpoint or content from public political discourse; they merely put additional burdens on those who would change existing laws. Because they in no way directly penalize anyone who would discuss any wildlife issue, they do not discriminate against any viewpoint at all. Plaintiffs contend that the mere existence of the Amendment has a "chilling effect" on politicos who want to change existing wildlife legislation. This is

not viewpoint or content-based discrimination, and Plaintiffs have cited no authority to suggest otherwise. The mere fact that someone is disheartened by the fact that they might have a difficult time passing legislation do to super-majority requirements does not suggest that they cannot be heard publicly on a matter. Plaintiffs' First Amendment challenge to Utah's Constitutional Amendment therefore fails.

### Order

For the reasons outlined above, Defendants motion to dismiss on standing and ripeness grounds is DENIED. Defendants motion to dismiss Plaintiffs' challenge to the Amendment on the grounds that it violates the First Amendment to United States Constitution is GRANTED.