**CITY OF SAULT STE. MARIE, MICHIGAN, et al., Plaintiffs,**

v.

**Cecil ANDRUS et al., Defendants.**

**Civ. A. No. 77–1388.**

United States District Court, District of Columbia.

Aug. 31, 1978.

Michael W. Breeskin, and David Albert Mustone, Tobin & Covey, Washington D.C., Thomas G. Moher, City Atty., Sault Ste. Marie, for plaintiffs.

Barbara N. Coen, Land and Natural Resources Division, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on defendants' motion to dismiss. This motion raises procedural questions in this area which appear to be matters of first impression. In this suit, plaintiffs are the City of Sault Ste. Marie, Michigan, and three individual taxpayers of that city. It appears that a group of Indians claiming to be the Sault Ste. Marie tribe of Chippewa Indians has been acquiring land in the area surrounding the city and then conveying that land in trust to the United States pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 461, et seq. In January of 1977, the tribe acquired a 76-acre tract within the city limits, and the Bureau of Indian Affairs approved the transfer of title to these lands in trust to the United States. As a result of the taking of these lands in trust, this tract is no longer subject to city taxes or to city zoning ordinances. Plaintiffs also allege (and defendants deny) that the trust status of these lands prevents city law enforcement on this property. Plaintiffs contend that the Sault Ste. Marie tribe is not a tribe within the meaning of 25 U.S.C. § 479, and that, therefore, the taking of lands in trust by the United States is an abuse of discretion. Plaintiffs seek a declaratory judgment to this effect on the basis, and on the bases, that (1) defendants' methods of

taking lands in trust violate due process and (2) defendants have failed to abide by the National Environmental Protection Act (NEPA) in taking this land for the construction of a large housing project without the filing of an environmental impact statement.

Defendants' motion to dismiss rests on three grounds. First, defendants claim that since this is a suit which will affect an interest in real property held by the United States, the United States is an indispensable party. However, defendants claim that since the United States' interest in this case is in Indian trust lands, the United States has not consented to be sued, see 28 U.S.C. § 2409a, and therefore this case must be dismissed. Second, defendants contend that the Sault Ste. Marie tribe is an indispensable party since any disposition of this case will affect their status as a tribe. However, defendants point out that this court has no personal jurisdiction over the tribe, which is located in Michigan, that the tribe is also immune from suit, and that, therefore, this case must be dismissed. Third, defendants contend that plaintiffs have failed to state a claim for which relief can be given. Specifically, defendants state that the individual taxpayers lack standing, and that the city has suffered no legal wrong since the city's ability to sell municipal bonds (the only actual damage alleged according to defendants) has not been impaired. The court will deal first with the issues of standing and certain jurisdictional problems presented by the complaint. The court will then consider defendants' arguments regarding sovereign immunity, indispensable parties, and the issues regarding plaintiffs' subsidiary claims.

I. *Standing.*

■ The issue of standing is fairly easily disposed of. In *City of Tacoma et al. v. Andrus et al.*, 457 F.Supp. 342 (D.D.C. 1978), the court had occasion to address issues similar to those presented here. In that case the Puyallup Tribe had purchased parcels of land within the city limits of Tacoma, Washington, and the City and Port of Tacoma, four individual taxpayers of the city, two adjacent municipalities and the county containing them all brought suit. The plaintiffs in that case did not attack the validity of the designation of the Puyallups as a tribe, but did attack the validity of taking land within municipal boundaries in trust due to the diminishment of the tax base and impairment of municipal law and zoning enforcement. The court in that case held that as to the City of Tacoma and the county, the loss of taxes and the frustration of police powers were sufficient injuries in fact to give those parties standing since these interests were indeed affected by the workings of the statute. *Id.* at 345. Similarly in the present suit, the City of Sault Ste. Marie has advanced the same types of injuries, and therefore the city must be held to have presented a claim for which relief may be granted. As for the individual taxpayers, the court in *Tacoma* indicated that their interests were not within the zone regulated by the statute, and that therefore they should be dismissed. *Id.* at 346. The individual plaintiffs in this case will suffer the same fate.

II. *Subject Matter Jurisdiction.*

■ The court notes that the complaint raises some doubts as to this court's subject matter jurisdiction over this case. The court may raise such issues *sua sponte* and act to clarify them. Plaintiff states that this court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331, which is general federal question jurisdiction, and pursuant to section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* The Supreme Court in *Sanders v. Califano,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), has held that there is no independent grant of federal jurisdiction under the Administrative Procedure Act. *Id.* 430 U.S. at 104– 107, 97 S.Ct. at 983–85. Section 10 of the A.P.A. clearly establishes the policy that judicial review of administrative action should be widely available. *Id.* 430 U.S. at 104, 97 S.Ct. at 983. However, the Indian Reorganization Act, the statute primarily at issue in this lawsuit, contains no specific review provisions. Although the Court rec-

ognized that, in the absence of specific review provisions, it might be rational to presume jurisdiction from the Congressional statement of policy in the A.P.A., the Court rejected such reasoning in light of the recent amendment to 28 U.S.C. § 1331. In Pub.L. 94–574, 90 Stat. 2721, Congress eliminated the $10,000 jurisdictional amount requirement for suits against the United States, its agencies, and any of its officers and employees in their official capacities. The Court held that by this amendment, Congress intended that section 1331 should henceforth supply subject matter jurisdiction for federal court review of agency action. *Id.* 430 U.S. at 107, 97 S.Ct. at 985. Therefore, in the absence of review provisions in the statute at issue, the only way for plaintiff to vindicate the policy favoring judicial review expressed by Congress in section 10 of the A.P.A. is by recourse to federal question jurisdiction. The A.P.A. alone provides no independent subject matter jurisdiction.

 Plaintiffs have invoked 28 U.S.C. § 1331(a) as an alternate basis for this court's jurisdiction. Section 1331(a) provides courts with general federal question jurisdiction over cases which "arise under" the Constitution, laws and treaties of the United States. Although the exact extent of this "arising under" clause has never been precisely determined, it is clear that section 1331(a) contemplates that the court must find that the law of the United States, in one form or another, is the basis of the dispute. The case at hand clearly arises under the Indian Reorganization Act of 1934, 25 U.S.C. § 461, *et seq.* The ultimate resolution of this case will involve a determination of whether the defendants have abided by the provisions of the Act in taking title to the land at issue in trust. Although the statute to which section 1331(a) looks in any particular case may limit the court's exercise of subject matter jurisdiction, *Association of American Medical Colleges v. Califano,* 186 U.S.App.D.C. 270, 275–277, 569 F.2d 101, 106–108 (1977), the Indian Reorganization Act contains no such statutory restriction. Therefore, this court does have subject matter jurisdiction of this

case pursuant to 28 U.S.C. § 1331 and 25 U.S.C. §§ 461 *et seq.* The court will now turn to consideration of whether the exercise of this jurisdiction is barred by either of the two remaining arguments advanced by defendants.

III. *United States as Indispensable Party: The Problem of Sovereign Immunity.*

██ Defendants argue that the United States is an indispensable party to this litigation since the title to the tract in question was transferred not to the Department of the Interior, Bureau of Indian Affairs, or officers thereof, but to the United States itself. Defendants further argue that since this title has been passed to the United States, this is primarily a suit concerned with title to property, and that pursuant to 28 U.S.C. § 2409a the United States has not consented to be sued regarding land taken in trust for the indians. Plaintiffs have replied that the United States is adequately represented by the named defendants, and that in any case, this suit is not barred by the doctrine of sovereign immunity since this is primarily a lawsuit to review agency action as allowed by 5 U.S.C. § 701, *et seq.*

With regard to defendants' assertion that the United States is an indispensable party to this action, Congress, in its recent amendments to 5 U.S.C. § 703, has sought to eliminate such contentions. Although the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* do not serve to provide an independent basis for subject matter jurisdiction, it cannot be said that this congressional enactment is a total nullity. Rather, 5 U.S.C. §§ 701–706 provide a blueprint for suits brought to review agency action. After the definitional and policy statements of 5 U.S.C. §§ 701 and 702, section 703 provides rules for the form of this type of action, and establishes guidelines for venue. Section 704 allows that only certain types of agency action may be reviewed. Section 705 provides for relief pending review, and section 706 defines the scope of review. Whatever else this case may involve, it is

clear that this court must engage in some type of review of the actions of the Department of the Interior. As such, this suit must follow the outline supplied by Congress in 5 U.S.C. §§ 701–706.

When Congress amended 5 U.S.C. § 703 to eliminate the contention that the United States was an indispensable party to suits seeking judicial review of agency action, the House Judiciary Committee stated:

Despite these attempts [to simplify pleadings in cases seeking judicial review of administrative action], problems persist involving parties defendant in actions for judicial review. In the committee's view the ends of justice are not served when government attorneys advance highly technical rules in order to prevent a determination on the merits of what may be just claims.

When an instrumentality of the United States is the real defendant, the plaintiff should have the option of naming as defendant the United States, the agency by its official title, appropriate officers, or any combination of them. The outcome of the case should not turn on the plaintiff's choice.

H.Rep. No. 94–1656, 94th Cong., 2d Sess. 17–18 (Sept. 22, 1976), *as reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6121, 6138. Despite this clear expression of Congressional disfavor for the defense of lack of indispensable parties, defendants have attempted to justify their position by citing a number of cases indicating that the United States is an indispensable party whenever a suit involves property held by the United States. Leaving aside for a moment the question of the applicability of these cases to the suit at hand, this court notes that all of the cases cited by defendants were decided before Congress amended section 703. As such, it would appear that none of these cases can overcome the strong expression of Congressional intent cited above. It would truly be contrary to the interests of justice to dismiss this suit on this ground when the United States, although titular trustee of the lands in question, has delegated all control over the lands in question to the offi-

cers and agencies already named as parties defendant. The court therefore rejects the argument that the failure to join the United States as a party requires dismissal of this action.

■ The fact that the United States is not itself an indispensable party to this suit does not, however, dispose of defendants contention that this suit is barred by the doctrine of sovereign immunity. In Public Law 94–574, Congress not only eliminated the jurisdictional amount for suits against the United States and abolished the defense of lack of indispensable party in suits for applicability of the doctrine of sovereign immunity. This limitation was accomplished by amending 5 U.S.C. § 702, which now states in pertinent part:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

Defendants contend that 28 U.S.C. §§ 2409a & 2410, in which the United States has consented to be sued in certain cases involving real property interests, not only specifically exempt Indian trust lands from this consent, but also represent a Congressional preemption of this area. In other words, defendants claim that the United States has consented to no other suits involving real property interests except those specifically listed. Plaintiffs have answered that both

sections 2409a and 2410 are inapplicable to the suit at hand, and that Congress in passing these sections dealt only with particular problems and did not intend to preempt the area.

28 U.S.C. § 2409a states in pertinent part:

The United States may be named as a party defendant in a civil action under ·this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands . . · ·

28 U.S.C. § 2410 contains a similar provision for lands on which the United States has a lien. Clearly, section 2410 alone is irrelevant to this case since no lien interests are involved. However, section 2410 has been cited by defendants in support of their contention that Congress, in enacting sections 2409a and 2410, meant to indicate the only times in which the United States would consent to any suit involving any real property interest held by the United States. In essence, defendants contend that sections 2409a and 2410, when read as an indication of a broad, preemptive Congressional intent, fulfill the requirements of 5 U.S.C. § 702(2), that is, that the statutes expressly or impliedly prohibit the granting of the relief sought. Neither statute expressly states such a preemptive intent, so defendants' arguments in this regard must rest on the implications which may be drawn from these two enactments. However, no fair readings of these statutes would permit this court to draw the inferences suggested by defendants. By their language and by their legislative history, both section 2409a and 2410 were designed to remedy specific problems. Section 2410 dealt with the defense of sovereign immunity in suits regarding lands on which the United States had a lien. As indicated earlier, such lien interests are not involved in this suit. Section 2409a was designed to deal with the same defense in actions to quiet title to property in which the United States had an interest. As shall be demonstrated, *infra*, the present case is not a quiet title action within the meaning of this statute. The

legislative history is devoid of any hint of a broad Congressional intent such as defendants suggest. It appears, therefore, that Congress did not intend to foreclose relief in other types of suits involving United States property interests. As such, defendants' argument on this basis must fail, and it only remains to be determined whether section 2409a, by its express terms, would allow invocation of the doctrine of sovereign immunity in this case.

■ Defendants contend that section 2409a, with its express exclusion of Indian trust lands, indicates that the United States has not consented to be sued regarding such lands in any way. However, section 2409a has a much narrower application. The House Judiciary Committee, reporting on the bill ·which eventually was passed as P.L. No. 92–562, which contained the provisions of section 2409a, indicated that the purpose of the bill was "to allow the United States to be made a party to actions in the United States District Courts to quiet title to lands in which the United States claims an interest." H.Rep. 92–1559, 92d Cong., 2d Sess. 1 (Oct. 10, 1972), *as reprinted in* [1972] U.S. Code Cong. & Admin.News, p. 4547. The report indicates that Congress felt the amendment would be applicable to those actions based on the English equitable bill of *quia timet*, and that the most common applications of this amendment would be to permit suits to settle boundary disputes between contiguous properties or to allow a plaintiff to assert less than a fee simple absolute interest in the property at issue. *Id.* at 4551–52. In order to accomplish this limited purpose, Congress set out in 28 U.S.C. § 2409a(c) the requirements for a valid complaint under this section. Such a complaint is required to state with particularity the nature of the right, claim, or interest plaintiff possesses in the property at issue. Plaintiffs in the present case clearly cannot meet this requirement since they possess no legally recognizable property interest in the 76-acre tract at issue. Plaintiffs merely seek to reestablish their right to exercise their police and taxing powers over the tract and the people and

activities thereon. Since plaintiffs do not possess the type of property right which would be necessary for the maintenance of a quiet title action, it is clear that 28 U.S.C. § 2409a is inapplicable to this suit, and may not, therefore, force dismissal of this suit due to the doctrine of sovereign immunity. This suit does require review of administrative action, and sovereign immunity for such suits has been waived in 5 U.S.C. § 702. In the interests of "fairness and accountability in the administrative machinery of the Government," H.Rep. No. 94–1654, *supra*, at 9, *as reprinted in* [1976] U.S.Code Cong. & Admin.News at 6130, defendants' argument must be rejected.

IV. *The Sault Ste. Marie Indian Tribe as an Indispensable Party: The Problem of Tribal Sovereign Immunity.*

■ Defendants' second argument in support of their motion to dismiss is that the purported Indian tribe in this suit is an indispensable party. Defendants further indicate that despite the tribe's status as an indispensable party, this court cannot compel joinder since this court has no jurisdiction over the tribe, which is located in Michigan, and because the tribe, as a quasi-independent nation, is protected from suit by the doctrine of sovereign immunity. As for this second advancement of the doctrine of sovereign immunity, although it is true that an Indian tribe or nation may not be sued without its consent, *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326 (9th Cir. 1975), *cert. denied*, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976), this protection applies only to the tribe and not to individual Indians. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). Congress, in the exercise of its plenary power to limit the right of self-government of the Indian nations, has indicated that certain prerequisites exist before a group of Indians may be considered a tribe and thereby be eligible for a special status in the law. *See* 25 U.S.C. §§ 477–479 (the Indians must all live on the same reservation, and must have adopted an organizational plan or constitution). Neither Con-

gress nor the Department of ·the Interior may create a tribe where none exists within the meaning of the Indian Reorganization Act. *United States v. State Tax Commission of the State of Mississippi*, 535 F.2d 300, 306 (5th Cir. 1976). Cognizant of the fact that this court must view the facts in the light most favorable to the plaintiffs in determining this motion to dismiss, it appears that the complaint does raise a genuine issue with regard to the legality of the Interior Department's dealing with this group of Indians as a tribe. Without a valid tribal status, these Indians are unprotected by the doctrine of sovereign immunity. It would be anomalous indeed to permit this disputed tribal status to serve as a bar to the disposition of this case which has as one of its central issues the validity of that status. Therefore, tribal sovereign immunity does not bar this suit.

■ As for defendants' contention that this group of Indians as a tribe is an indispensable party, and that this court must therefore dismiss this suit for lack of jurisdiction over that indispensable party, it should be noted that the Indians' primary interest in this suit is as beneficiary of the land trust. Plaintiffs do not question the validity of the sale of the 76-acre tract to the Indians, nor would they have standing to do so. Rather, plaintiffs challenge an administrative action taken by defendants after the Indians purchased the land in question. It is apparent that the full resolution of the issues presented in this case will require this court to decide whether the Interior Department acted in accordance with the law in treating the Indians as a tribe for the purposes of taking the land in question in trust. Although the tribe might be expected to be an indispensable party when such a legal determination is at issue, *see* Fed.R.Civ.P. 17 & 19, there is a well-recognized exception in light of the special relationship between the federal government and the Indian nations. The Indians occupy, rather than enjoy, "a peculiar and protected status as wards of the Federal government." *Gray v. United States*, 394 F.2d 96, 98 (9th Cir. 1967). The provisions

in the Indian Reorganization Act providing that the United States may take land in trust for Indian tribes is one manifestation of this special relationship since it allows the government to secure areas in which the Indian nations may operate as the semi-autonomous peoples the law recognizes them to be. Although this relationship may have abused the Indian nations as often as it has benefited them, the court is not in the position of questioning this Congressional policy of stewardship. Rather, it appears that the United States in this case occupies its traditional role of guardian along with its statutory position of trustee. Congress' power in this area is plenary; whatever autonomy the Indian nations enjoy, even down to their very status as tribes, exists only due to Congressional action. Under the present state of the law, harsh though it may be, if this case raises issues in which the United States may adequately represent and protect the Indian group herein involved, then the purported tribe is not an indispensable party to this action. *Cheyenne River Sioux Tribe v. United States*, 338 F.2d 906, 910 (8th Cir.), *cert. denied* 382 U.S. 815, 86 S.Ct. 34, 15 L.Ed.2d 62 (1964); *Pan American Petroleum Corp. v. Udall*, 192 F.Supp. 626, 628 (D.D.C.1961).

This suit concerns an area in which the federal government controls all action. The determination of tribal status and the taking of land in trust have been committed to the Department of the Interior in Congress' exercise of its plenary power. 25 U.S.C. § 2. This court must "tread lightly" so as to avoid infringing on this area reserved to Congress. *Santa Clara Pueblo v. Martinez, supra*, 436 U.S. at 60, 98 S.Ct. at 1678. It appears that the federal defendants, as trustees and guardians of the Indians, will adequately represent the interests of the Indians who are the beneficiaries of the trust at issue here. As such, the Indians are not indispensable parties and this court does have jurisdiction over this suit.

## V. *Subsidiary Claims.*

In addition to the contention that the entire case should be dismissed, defendants move for the dismissal of three of plaintiffs' subsidiary claims. Specifically, plaintiffs have claimed: (1) that the government violated due process of law when it took the land in trust and then refused to grant plaintiffs an administrative hearing regarding the tax consequences; (2) that defendants have failed to file an environmental impact statement for the proposed low-income housing project to be built on the land, and that therefore construction should be enjoined; and (3) that section 5 of the Indian Reorganization Act is an unconstitutional delegation of legislative power without appropriate standards.

The latter two claims are easily disposed of. The claim pursuant to NEPA is deficient because the Department of the Interior and the other defendants in this case have no control over the proposed housing project to be built on the land, and therefore cannot be held in account for the lack of an E.I.S. The delegation claim fails because, even though the acquisition of lands in trust is discretionary with the Secretary, *see* 25 U.S.C. § 465, the legislative history and the Act itself, providing as it does a definition of an Indian tribe, do provide adequate standards for the exercise of this discretion. This is not to intimate any opinion as to whether those standards have been met in this case. Rather, it is simply to demonstrate that the delegation theory lacks merit.

The due process claim is somewhat more difficult to deal with. At least one court has held that a city such as plaintiff is a "person" within the meaning of the due process clauses of the Fifth and Fourteenth Amendments. *Township of River Vale v. Town of Orangetown*, 403 F.2d 684, 686 (2d Cir. 1968). As for the question of whether the power to tax property is itself a property right within the contemplation of the Amendments, it is apparent that the power to levy a property tax is one of those powers reserved to the states by the Tenth Amendment, *see Miller v. Bauer*, 517 F.2d 27, 30 (7th Cir. 1975), and that in this case the state of Michigan has delegated this authority to the City of Sault Ste. Marie.

It might therefore be said that the City has a statutory expectancy that it will continue to retain this right. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In the somewhat analogous area of eminent domain, it is clear that the government owes the holder of a property right some form of due process before taking such property, even if only to determine the true value of the property seized. *Miles v. District of Columbia*, 166 U.S.App.D.C. 235, 239, 510 F.2d 188, 192 (1975). Once again viewing the allegations in the complaint in the light most favorable to plaintiff, it cannot be said that this claim must be dismissed. Although Congress does possess plenary power in this area, such power must be exercised, either by Congress or its delegate, in a fair and orderly way. Since it does not appear that Congress in passing the Indian Reorganization Act, even contemplated that the government would take in trust land already within the organizational control of an existing municipality, a question is raised regarding the propriety of the Interior Department's actions in the absence of some sort of hearing. To be sure, neither the Act nor any state statute requires such a hearing, and the disposition of this motion will not decide the merits of this claim, but since a question exists in this area, and since this court's jurisdiction of this claim is not otherwise barred, the due process claim will not be dismissed at this time.

VI. *Conclusion.*

The court in *City of Tacoma, supra,* noted that it is unfortunate that the government has taken in trust Indian lands which are already subject to the jurisdiction of preexisting municipal corporations. The creation of discrete enclaves of Indian reservation land within organized municipalities creates havoc as the city or county attempts to enforce its criminal, health and land use ordinances. There are, of course, strong equitable considerations on both sides of this dispute. The parties in the present case have agreed not to allow any further taking of lands in trust within the city limits until this suit is disposed of. This self-imposed stay, along with the court's decision today to retain jurisdiction over most of the issues in this suit, will hopefully allow for a reasonable resolution to the troublesome issues presented in this case.

An appropriate Order accompanies this Memorandum.