F I L E D
United States Court of Appeals
Tenth Circuit

AUG 4 2004

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NEIGHBORS FOR RATIONAL DEVELOPMENT, INC.,

     Plaintiff-Appellant,

v.

GAIL NORTON, Secretary of the Interior; NEAL A. McCALEB, Assistant Secretary of Indian Affairs; ROBERT BARACKER, Area Director, Albuquerque Area Office, Bureau of Indian Affairs,

     Defendants-Appellees.

No. 02-2085

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-99-59-JC/LFG)

---

John W. Utton of Sheehan, Sheehan & Stelzner, P.A., and J. Brian Smith of J. Brian Smith Law Firm, LLC, Albuquerque, New Mexico, for Plaintiff-Appellant.

Todd S. Aagaard (Thomas L. Sansonetti, Assistant Attorney General; E. Ann Peterson, Department of Justice, Washington, D.C.; Mary Anne Kenworthy, Department of the Interior, Washington, D.C.; Dori Richards, Department of the Interior, Albuquerque, New Mexico, with him on the brief), Department of Justice, Washington, D.C., for Defendants-Appellees.

---

Before **HENRY**, Circuit Judge, and **McKAY** and **BRORBY**, Senior Circuit Judges.

**BRORBY**, Circuit Judge.

_____

Neighbors for Rational Development, Inc. ("Neighbors"), appeals a district court order upholding a decision made by the Secretary of the United States Department of Interior ("Secretary") to acquire certain property in trust for the nineteen Indian Pueblos of New Mexico. After reviewing the record and the parties' arguments, we conclude that to the extent Neighbors requested relief would divest the United States of title to the property the Quiet Title Act precludes Neighbors' suit. In addition, we conclude Neighbors' request for an injunction halting development on the property until the Secretary has complied with the National Environmental Policy Act is moot. We therefore dismiss this appeal and remand the case to district court with instructions to vacate its decision and dismiss this action.

## BACKGROUND

In 1884, the President of the United States "reserved and set apart" federal property within the City of Albuquerque, New Mexico "for Indian purposes." Executive Order, Oct. 3, 1884 (Pueblo Industrial School Reserve), _reprinted in_ 1 Indian Affairs: Laws and Treaties 877-78 (Charles J. Kappler ed., 2d ed. 1904). The land was used for an Indian school. Throughout the next several decades,

other parcels of land were added to the Indian School property. The school, however, closed in 1981.

While the property was lying idle, the United States Department of the Interior deeded it to nineteen Pueblos of New Mexico[1] ("the Pueblos") as tenants in common. The deed required the Pueblos use the land for "public purposes." In the event the Pueblos failed to satisfy this provision and the failure lasted for at least a year, the Secretary had authority declare a forfeiture. Notwithstanding this provision, the Pueblos continued to let the property lie idle. The Pueblos instead explored options that would allow the United States to hold the property in trust for them.

Finally, the Pueblos requested the Secretary take title to the property and hold it in trust for them. After reviewing the administrative record, the Secretary took the property in trust for the Pueblos.

With the property in trust, the Pueblos made preparations to develop the

---

[1] These are the Pueblos of Acoma, Cochiti, Isleta, Jemez, Laguna, Nambe, Picuris, Pojoaque, San Felipe, San Ildefonso, San Juan, Sandia, Santa Ana, Santa Clara, Santo Domingo, Taos, Tesuque, Zia, and Zuni.

land into commercial office space. With authorization from the Department of Interior, the Pueblos entered a lease agreement with the Indian Pueblos Development Corporation. *See Neighbors for Rational Dev., Inc. v. Albuquerque Area Dir., Bureau of Indian Affairs*, 33 I.B.I.A. 36, 36-37 (1998). Neighbors, an organization of landowners, business owners, and residents of land near the Indian School property, appealed the lease approval raising "a veritable laundry list of alleged violations of [the National Environmental Policy Act] and its implementing regulations." *Id.* at 36 n.2, 42. The Interior Board of Indian Appeals found Neighbors "failed to show error in [the Bureau of Indian Affair's] approval of the lease between the 19 Pueblos and the [Indian Pueblos Development Corporation]." *Id*. at 49.

## DISTRICT COURT PROCEEDING

After losing its appeal concerning the lease of the Indian School property, Neighbors filed a complaint in the United States District Court for the District of New Mexico, arguing the Secretary improperly "plac[ed] the property in trust without complying with the National Environmental Policy Act." Specifically, Neighbors argued the Secretary should have conducted an environmental assessment under the National Environmental Policy Act because "at the time the property was placed in trust" the Secretary "contemplated a change in land use."

The district court initially dismissed the complaint for lack of standing.

Unsatisfied with this result, Neighbors asked the district court to reconsider its order, or alternatively, for leave to amend its complaint. The district court reaffirmed its ruling, but granted Neighbors permission to amend its complaint to allege the Secretary had violated regulations specifically governing the acquisition of land in trust for tribes. *See* 25 C.F.R. § 151.10 (1993). Neighbors then amended its complaint alleging the Secretary

> unlawfully did not consider and evaluate: (1) the need of the tribe for the trust conversion; (2) the purpose for which the land would be used; (3) the impact on the state and its subdivisions on removing the land from the tax rolls; (4) jurisdictional problems and potential conflicts of land use that might arise; and (5) whether [the Bureau of Indian Affairs] could manage the additional responsibilities; all as required by 25 C.F.R. Part 151 and [Bureau of Indian Affairs] Guidelines.

Neighbors' amended complaint also alleged the Secretary "failed to comply with the National Environmental Policy Act and its implementing regulations and guidelines ... by failing to perform an Environmental Assessment or Environmental Impact Statement prior to accepting the ... property in trust for the Pueblos." The Secretary asked the district court to strike this portion of the complaint. Noting its prior order holding Neighbors did not have standing to bring environmental claims, the district court granted the motion and ordered the National Environmental Policy Act claim stricken from the complaint.

The district court then turned to the merits of Neighbors' contention the Secretary did not follow the trust acquisition regulations. After briefing by the parties, the district court concluded the Secretary's decision to accept the property in trust was arbitrary and capricious because it failed to adequately consider factors listed in the trust acquisition regulations. The district court therefore remanded the case to the Secretary.

The ongoing district court saga did not, however, end there. This time it was the Secretary who was displeased with the decision. The Secretary asked the district court to alter or amend the decision, arguing, among other things, it should be allowed to supplement the record. Although the court refused to address a new argument the Secretary included in the motion, the district court did amend its previous order allowing the Secretary "to supplement the administrative record with additional affidavits or testimony as may be necessary to explain the agency's decision."

Seizing the opportunity, the Secretary submitted declarations from two Bureau of Indian Affairs employees who had reviewed various aspects of the proposed land acquisition and prepared recommendations and summaries for the Secretary. At this point, the district court decided sua sponte to reconsider its

finding that the Secretary's decision to accept the property in trust was arbitrary and capricious and ordered a hearing. Ultimately, the district court vacated, in part, its earlier order and reinstated the Secretary's decision to accept the property. The court determined the Secretary had not acted arbitrarily and capriciously in relying on contemporaneous explanations of a Bureau of Indian Affairs area director.

**DISCUSSION**

Neighbors then filed this appeal. Neighbors argues "[t]he Secretary's decision to acquire the [Indian School] property in trust for the Pueblos was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law" because the Secretary (1) failed to comply with the National Environmental Policy Act, and (2) failed to consider "the regulatory factors for trust acquisitions" in 25 C.F.R. § 151.10.

The Secretary argues "Neighbors' claim to set aside the Department of the Interior's trust acquisition of the Albuquerque Indian School property challenges the United States' title to the property and is therefore precluded by the Quiet Title Act." The Secretary further maintains Neighbors lacks standing to bring its claims, and, in any event, did not violate the National Environmental Policy Act

or the trust acquisition regulations. Finally, the Secretary urges us to conclude Neighbors' National Environmental Policy Act claim is moot because, since the trust acquisition, the Secretary completed an Environmental Assessment for the lease on the Indian School property.

Because the Secretary's Quiet Title Act argument involves subject matter jurisdiction, we begin there. We review questions involving subject matter jurisdiction de novo. *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1206 (10th Cir. 1999), *cert. denied*, 528 U.S. 1106 (2000). Neighbors asserts the district court had jurisdiction under 28 U.S.C. §§ 1331, 2201, and 2202. The general federal question statute, 28 U.S.C. § 1331, grants the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," but "does not waive the government's sovereign immunity." *Eagle-Picher Indus., Inc. v. United States*, 901 F.2d 1530, 1532 (10th Cir. 1990). Consequently, district court jurisdiction cannot be based on § 1331 unless some other statute waives sovereign immunity. *See New Mexico v. Regan*, 745 F.2d 1318, 1321 (10th Cir. 1984). Sections 2201 and 2202 are unhelpful in this regard. *See Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002); *McGrath v. Weinberger*, 541 F.2d 249, 252 n.4 (10th Cir. 1976).

Neighbors suggests the Administrative Procedures Act provides the necessary waiver of immunity allowing the district court to review this case. The Administrative Procedures Act's waiver of sovereign immunity states: "A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action ... seeking relief other than money damages ... shall not be dismissed ... on the ground that it is against the United States." 5 U.S.C. § 702. The waiver is limited. It does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

The Secretary argues the Quiet Title Act forbids the relief Neighbors is seeking. Like the Administrative Procedures Act, the Quiet Title Act contains a limited waiver of sovereign immunity. It allows the United States to "be named as a party defendant in a civil action ... to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest in water rights." 28 U.S.C. § 2409a(a). The Quiet Title Act, however, does not "apply to trust or restricted Indian lands." *Id.* "Thus, when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the Government's immunity." *United States v. Mottaz*, 476 U.S. 834, 843 (1986).

Neighbors protests the Quiet Title Act is inapplicable in this case because it "is not an adverse claimant seeking to quiet title in the [Indian School] property" and draws our attention to the fact it does not claim "any ownership interest" in the property. The Secretary counters Neighbors' suit is the equivalent of a quiet title action because Neighbors seeks a "declaratory judgment that the trust acquisition is null and void."

We conclude Neighbors' claim falls within the scope of the Quiet Title Act's limitations on suits. It is well settled law the Quiet Title Act's prohibition of suits challenging the United States' title in Indian trust land may prevent suit even when a plaintiff does not characterize its action as a quiet title action. *See Mottaz*, 476 U.S. at 841-42. *See also Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 284-85 (1983) (holding the Quiet Title Act's restrictions on suits cannot be circumvented with artful pleading). Thus, Neighbors' characterization of this suit as a challenge to the Secretary's actions under the Administrative Procedures Act is immaterial. Instead, we must focus on the relief Neighbors requests. *See Mottaz*, 476 U.S. at 842 (opining suit was properly characterized as a quiet title action based on the relief plaintiff sought).

In this case, Neighbors asks the court to "enter declaratory judgment that

the trust acquisition is null and void."  Neighbors also seeks to "permanently enjoin [the Secretary] from converting the [Indian School] property to trust status without fully complying will all federal laws, regulations, and Guidelines, including the National Environmental Policy Act."  We think these requests fall within the scope of suits the Indian trust land exemption in the Quiet Title Act sought to prevent.

In advocating Congress adopt the Indian trust land exemption, the Solicitor for the Department of Interior explained:

> The Federal Government's trust responsibility for Indian lands is the result of solemn obligations entered into by the United States Government.  The Federal Government has over the years made specific commitments to the Indian people through written treaties and through informal and formal agreements.  The Indians, for their part, have often surrendered claims to vast tracts of land.  President Nixon has pledged his administration against abridging the historic relationship between the Federal Government and the Indians without the consent of the Indians.

House Report No. 92-1559, at 13 (1972) (letter from Mitchell Melich, Solicitor for the Dep't of the Interior) *reprinted in* 1972 U.S.C.C.A.N. 4547, 4556-57.  *See Permitting Suits Against United States to Adjudicate Disputed Land Titles*, S. Rep. No. 92-575, at 5 (1971); *Dispute of Titles on Public Lands: Hearing on S. 216, S. 579, and S. 721 Before the Senate Comm. on Interior & Insular Affairs*, 92nd Cong. 2, 19 (1971) (letter and statement of Mitchell Melich, Solicitor for the

Dep't of the Interior).[2]  Thus, it appears clear Congress' intent in excluding

Indian trust lands from the Quiet Title Act's waiver of sovereign immunity was to

prevent adverse claimants from interfering with the United States' obligations to

the Indians.  Although Neighbors is not an adverse claimant in the sense it is not

seeking to gain title to the Indian School property, we think the Indian trust land

exemption applies with equal force here.  If Congress was unwilling to allow a

plaintiff claiming title to land to challenge the United States' title to trust land,

we think it highly unlikely Congress intended to allow a plaintiff with no claimed

property rights to challenge the United States' title to trust land.  Construing the

Quiet Title Act's waiver of sovereign immunity narrowly – as we must – we

conclude the Act impliedly precludes the relief Neighbors seeks. *See Hull ex rel.*

*Hull v. United States*, 971 F.2d 1499, 1509 (10th Cir. 1992) (holding waivers of

sovereign immunity should be construed narrowly).


Our holding concerning the Quiet Title Act is consistent with the Eleventh

Circuit's holding in a similar case.  *See Florida v. United States Dep't of the*

---

[2] *See also Mottaz*, 476 U.S. at 843 n.6 (recognizing this legislative history); *North Dakota*, 461 U.S. at 1817 (noting "[t]he Executive branch felt that a waiver of immunity [for claim over Indian trust land] would not be consistent with 'specific commitments' it had made to the Indians through treaties and other agreements").

*Interior*, 768 F.2d 1248 (11th Cir. 1985). In the Eleventh Circuit's case, the State of Florida, the Florida Department of Revenue, and the City of Tampa brought suit challenging the Secretary of the Interior's decision to acquire land in trust for the Seminole Indian Tribe. *See id.* at 1250. These plaintiffs, seeking review based on the waiver of sovereign immunity in the Administrative Procedures Act, claimed the Secretary had not followed the applicable trust acquisition regulations and sought to "divest the United States of its title to the land." *Id*. at 1250-53. The Eleventh Circuit, however, held the Quiet Title Act impliedly forbids the relief the plaintiffs were seeking. *Id*. at 1254. Like Neighbors in the case before us, the plaintiffs in the Eleventh Circuit case protested theirs was "not a suit to quiet title, because they [did] not seek to have title to the land quieted in them, nor [did] they seek recognition of any property interest in the land." *Id*. In rejecting this argument, the Eleventh Circuit explained that "[b]y forbidding actions to quiet title when the land in question is reserved or trust Indian land, Congress sought to prohibit third parties from interfering with the responsibility of the United States to hold lands in trust for Indian tribes." *Id.* Consequently, the Eleventh Circuit concluded it did not matter that the plaintiffs were not seeking title to the land because their requested relief would still "interfere[] with the trust relationship." *Id*. "Moreover, Congress chose to preclude an adverse claimant from divesting the United States' title to Indian lands held in trust. It

-13-

would be anomalous to allow others, whose interest might be less than that of an adverse claimant, to divest the sovereign of title to Indian trust lands." *Id.* at 1254-55. We think the Eleventh Circuit's reasoning is compelling.

Neighbors argues we are nevertheless precluded from adopting the Eleventh Circuit's reasoning in *Florida* because our opinion in *McAlpine v. United States,* 112 F.3d 1429 (10th Cir. 1997), "expressly rejected *Florida* in holding that trust acquisition decisions are reviewable under [the Administrative Procedures Act]." Neighbors' argument misinterprets our holding in *McAlpine*. In that case, Mr. McAlpine, an enrolled member of the Osage Tribe, brought suit against the Secretary of the Interior for denying his application "to take his land into trust status." *Id*. at 1430. He alleged the Secretary had not followed the trust acquisition regulations in rejecting his application. *See id.* at 1431. We held Mr. McAlpine could challenge the Secretary's decision under the waiver of sovereign immunity in the Administrative Procedures Act. *See id*. at 1435. In reaching this conclusion, we noted "neither party direct[ed] us to, nor [did] we [find], any other statute precluding review of the Secretary's decision regarding trust land acquisitions." *Id*. at 1432. The Quiet Title Act was not in play in *McAlpine* because the Secretary had not taken the title in trust. Further, Mr. McAlpine was not seeking to divest the United States of its title in any Indian trust land. We,

therefore, conclude *McAlpine's* holding does not answer the question before us in this case.[3]

Neighbors' next attempt to avoid the Indian trust exemption in the Quiet Title Act draws our attention to what it characterizes as "the Secretary['s] conce[ssion] in 1996 in the preamble to [Department of the Interior's] amended regulations that trust acquisition[s] are reviewable under [the Administrative Procedures Act]." Neighbors' argument mischaracterizes the new regulations. The summary of the new regulations states:

> Following consideration of the factors in the current

---

[3] In reaching its conclusion, the *McAlpine* decision did consider and reject part of the Eleventh Circuit's opinion in *Florida*. The portion of the *Florida* decision *McAlpine* rejected did not, however, involve the Quiet Title Act. After concluding the Quiet Title Act prevented the plaintiff's suit, the Florida court stated its "conclusion that Congress did not intend to permit third parties to disrupt the trust relationship of the United States to land held for the Indians [was] bolstered" by the fact the Administrative Procedures Act could not operate as a waiver of sovereign immunity to the extent the agency action was "committed to agency discretion by law." *Florida*, 768 F.2d at 1255. The *Florida* court then looked at the trust acquisition regulations and determined they were drawn in such a broad fashion that trust acquisitions were really left to the discretion of the Secretary. *See id.* at 1255-57. It is this last conclusion that our *McAlpine* decision rejected. *See McAlpine*, 112 F.3d at 1434. *McAlpine* did not comment as to the validity of Eleventh Circuit's reasoning concerning the Quiet Title Act. *See id*. *See also United States v. Roberts*, 185 F.3d 1125, 1134 n.7 (10th Cir. 1999) (noting *McAlpine* "expressly rejected" *Florida's* holding that "the decision to acquire land [in trust for Indians] is one within the Secretary's discretion"), *cert. denied*, 529 U.S. 1108 (2000).

-15-

regulations and completion of the title examination, the Department, through Federal Register notice, or other notice to affected members of the public, will announce any final administrative determination to take land in trust. The Secretary will not acquire title to the land in trust until at least 30 days after publication of the announcement. This procedure permits judicial review *before* transfer of title to the United States.

Land Acquisitions, 61 Fed. Reg. 18082, at 18082 (April 24, 1996) (emphasis added). The preamble then states "[t]he Quiet Title Act ... precludes judicial review *after* the United States acquires title." *Id*. (emphasis added). Consequently, rather than helping Neighbors' argument, the new regulations actually support the conclusion judicial review is only available under the Administrative Procedures Act and trust acquisition regulations if the United States has not yet acquired title to the property. Since, in this case, the United States has already taken title to the Indian School property, judicial review is not available.

Neighbors cites several other cases for the proposition the Quiet Title Act does not bar judicial review of the Secretary's decision to accept the property in trust status. *See South Dakota v. United States Dep't of the Interior,* 69 F.3d 878, 881 n.1 (8th Cir. 1995) (stating in dicta: "We doubt whether the Quiet Title Act precludes [Administrative Procedure Act] review of agency action by which the United States acquires title"), *judgment vacated and case remanded by* 519 U.S.

919 (1996); *Shivwits Band of Paiute Indians v. Utah,* 185 F. Supp. 2d 1245, 1250 (D. Utah 2002) (holding the Quiet Title Act prevented the court from reviewing the government's right to hold title to property in trust for Indian, but still requiring the Bureau of Indian Affairs to comply with the National Environmental Policy Act); *Kansas ex rel. Graves v. United States*, 86 F. Supp. 2d 1094, 1096 (D. Kan. 2000) (holding the Quiet Title Act did not apply to a Department of Interior determination that a parcel of land was Indian land within the meaning of the Indian Gaming Regulation Act); *Pueblo of Taos v. Andrus*, 475 F. Supp. 359, 364-65 (D. D.C. 1979) (holding Quiet Title Act did not apply to suit to settle the boundary between Indian trust land and land administered by the United States Forest Service); *City of Sault Ste. Marie v. Andrus*, 458 F. Supp. 465, 471-72 (D. D.C. 1978). None of these cases is persuasive. Although the Eighth Circuit's *South Dakota* opinion "doubt[s]" the applicability of the Quiet Title Act, it specifically states the court did not decide the issue. *See South Dakota*, 69 F.3d at 881 n.1. *Kansas ex rel. Graves* and *Pueblo of Taos* are not factually analogous to the case before us because decisions for the plaintiff would not have divested the United States of title property. *See Kansas ex rel. Graves*, 86 F. Supp. 2d at 1095-96; *Pueblo of Taos*, 475 F. Supp. at 365 (noting the United States held title to both pieces of property involved in the border dispute). Likewise, the decision in *Shivwits Band of Paiute Indians* refused to allow the plaintiff to divest the

-17-

United States of title in Indian trust land. *See Shivwits Band of Paiute Indians*, 185 F. Supp. 2d at 1250. This leaves only *City of Sault Ste. Marie* supporting Neighbor's contention. That case concluded the Quiet Title Act only prevented a suit involving Indian trust land to the extent the suit met the Act's requirements for an otherwise valid complaint. *City of Sault Ste. Marie*, 458 F. Supp. at 471. *See* 28 U.S.C. § 2409a(d) (requiring "[t]he complaint ... set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States"). The validity of this reasoning is undercut by the Supreme Court's subsequent opinions in *Mottaz* and *North Dakota*. In determining whether the Quiet Title Act applied, both *Mottaz* and *North Dakota* made it clear plaintiffs cannot circumvent the intent of the Quiet Title Act's limitations with artful pleading. *See Mottaz*, 476 U.S. at 841-42; *North Dakota*, 461 U.S. at 284-85. Following the Supreme Court's lead, we focus our attention on how the plaintiff's suit could impact the United States' title to Indian trust land rather than on the type of property interest the plaintiff asserts. To the extent *City of Sault Ste. Marie* or any other case suggests a different path, we disagree.

In sum, we conclude the Administrative Procedure Act cannot waive the

United States' sovereign immunity because the Quiet Title Act precludes Neighbors' suit to the extent it seek to nullify the trust acquisition.

Neighbors does seek one other type of relief. It requests the court "permanently enjoin [the Secretary] from proceeding with or authorizing development of the [Indian School] property until such time that [the Secretary] compl[ies] with all federal laws, regulations, and Guidelines, including the National Environmental Policy Act." In part, this request for relief is similar to Neighbors' request to invalidate the trust acquisition and prevent the Secretary from reacquiring the Indian School property because it seeks to have Secretary re-examine the decision to take the property into trust. We think any claim seeking to re-examine issues unique to the trust acquisition is moot because the court is without authority to provide any relief. "When events occur that prevent the ... court from granting any effective relief, an issue is moot." *Casad v. United States Dep't of Health & Human Servcs.*, 301 F.3d 1247, 1254 (10th Cir. 2002). Assuming for the sake of argument the district court considered the merits of Neighbors various claims and concluded the Secretary had not complied with the National Environmental Policy Act or the trust acquisition regulations, the district court could theoretically order the Secretary to now consider the appropriate factors. The district court, however, has no power to divest the United States of

the property and Neighbors does not allege the Secretary has power to reconsider its decision. Requiring the Secretary to re-examine its trust acquisition decision would not provide Neighbors with any meaningful relief and would be a waste of agency resources – not to mention the judicial resources that would be consumed in evaluating the sufficiency of the Secretary's initial considerations. Since the Secretary has acquired title to the property, the issue is moot.

In part, Neighbors' request for an injunction preventing development of the property until the Secretary complies with the National Environmental Policy Act can be read not as a request to have the Secretary rehash the trust acquisition decision, but rather as a request to have the Secretary consider the environmental impact development itself will have on the Indian School property. We do not think this request for relief is precluded by the Quiet Title Act. Furthermore, considering various development proposals after the trust acquisition would not be simply an exercise in futility. We, nevertheless, conclude this request for relief is moot because the Secretary complied with the National Environmental Policy Act when approving a lease of the Indian School property. We do not think it would be wise to require the Secretary to plow the same ground twice. Neighbors argues the Environmental Assessment completed for the lease is not sufficient because it did not "consider[] the issues and alternatives applicable to

the trust acquisition." As we have already explained, we think it unproductive to re-examine a trust decision that cannot be changed. Neighbors never argues the completed environmental assessment does not adequately consider the environmental impact and alternatives to development of the property. Thus, we conclude Neighbors' request for an injunction barring development of the property until a National Environmental Policy Act analysis is complete is moot.

Because we conclude the United States has not waived its sovereign immunity for the portions of the suit challenging the trust acquisition and the other claims Neighbors raises are moot, we need not consider whether Neighbors has standing to bring its claims.

## CONCLUSION

For the reasons discussed above, we **DISMISS** this appeal and **REMAND** the case to the district court with instructions to vacate its decision and dismiss this action.